Raymond P. Boucher, State Bar No. 115364
  *ray@boucher.la*
Alexander Gamez, State Bar No. 309708
  *gamez@boucher.la*
Michael Gorelik, State Bar No. 337068
  *gorelik@boucher.la*
Seena Paul, State Bar No. 340184
  *paul@boucher.la*
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:   (818) 340-5400
Fax:   (818) 340-5401

*Attorneys for Plaintiff*
*Alexis Zelaya Gonzalez*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS ZELAYA GONZALEZ,<br><br>       Plaintiff,<br><br>    v.<br><br>CORECIVIC, INC.; CORRECTIONAL MEDICINE ASSOCIATES, P.C.; and DOES 1-50, inclusive,<br><br>       Defendants. | Case No. **'24CV0087 JAH BLM**<br><br>**COMPLAINT FOR:**<br><br>1) **Violation of Cal. Gov. Code Section 7320;**<br>2) **Negligence;**<br>3) **Intentional Infliction of Emotional Distress;**<br>4) **Sexual Harassment;**<br>5) **Sexual Battery; and**<br>6) **Gender Violence**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Alexis Zelaya Gonzalez ("Plaintiff"), an individual, hereby alleges the following facts and claims against Defendants CoreCivic, Inc. and Correctional Medicine Associates, Inc., and Does 1-50 (collectively, "Defendants"), and respectfully requests a trial by jury of all issues and causes of action so triable:

## INTRODUCTION

1.     Plaintiff came to the United States through San Ysidro, California wherein he sought Asylum and was subsequently detained at the Otay Mesa Detention Center ("Otay") in San Diego, California in or around 2020.

2.     Defendant CoreCivic, Inc. ("CoreCivic") is a private corporation at owns and manages private prisons and detention centers for profit. Pursuant to a contract with U.S. Immigration & Customs Enforcement ("ICE"), it operates Otay where Plaintiff was held.

3.     While detained at Otay, Plaintiff was subjected to multiple sexual assaults per week for approximately one (1) year at the hands of a nurse practitioner employed by CoreCivic and Correctional Medicine Associates, P.C. ("CMA"). This employee presented himself to Plaintiff as a doctor with significant authority and framed his sexual assaults of Plaintiff to Plaintiff as medical treatment for Plaintiff's penile implants or, in the alternative, as a condition for providing Plaintiff with medical care for ongoing and severe back pain.

4.     For-profit prison companies such as Defendants purposefully under-resource detention facilities, creating cesspools of suffering that generate millions of dollars in profits with little accountability or oversight. To combat this and hold private prison corporations responsible for the health and safety of those in their custody, in 2020, the California Legislature enacted A.B. 2338, the Accountability in Detention Act, now codified at California Government Code section 7320. Among other things, this law provides that if a private prison violates the terms of its contacts with the government, the victim may bring a civil action against the private prison for damages.

5.     Plaintiff brings this action pursuant to Government Code section 7320 to hold Defendants accountable for failing to provide training to their staff pertaining to sexual abuse and assault awareness, prevention, intervention, and reporting, and their employees' failure to recognize and/or be alert to the risks and signs of the staff-on-detainee sexual assaults in violation of their contract with ICE, and to compensate Plaintiff for the lasting harm that Defendants' tortious conduct inflicted upon him.

## PARTIES

6.     From approximately 2020 to 2022, Plaintiff was detained at Otay in San Diego, California.

7.     Defendant CoreCivic is a for-profit corporation  conducts business in California. CoreCivic is the largest owner and operator of partnership correctional, detention, and residential reentry facilities in the nation with 111 facilities throughout the United States. CoreCivic has an annual revenue of $1.85 billion. All CoreCivic employees were acting within the scope of their employment at all times relevant to this Complaint.

8.     Defendant CMA employs physicians, nurse practitioners, physician assistants, and psychiatrists to work at Defendant CoreCivic's facilities including Otay. Upon information and belief, Defendant CMA is a subsidiary of and/or otherwise affiliated with Defendant CoreCivic. Indeed, CMA and CoreCivic share the same Tennessee address as their principal place of business. Healthcare professionals employed by CMA provide services exclusively for CoreCivic, and are, upon information and belief, also CoreCivic employees. All CMA employees were acting within the scope of their employment at all times relevant to this Complaint.

9.     The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of Does 1 through 50, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. The full extent of the facts linking such fictitiously sued Defendants is unknown to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated

herein as a Doe was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to Plaintiff. Plaintiff will hereinafter seek leave of the Court to amend this Complaint to show the Defendants' true names and capacities after the same have been ascertained.

10.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants CoreCivic, CMA, and DOES 1 through 10, inclusive, were agents, servants, employees, successors in interest, partners, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that each and every defendant, as aforesaid, when acting as principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer.

## **VENUE AND JURISDICTION**

11.     The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.

12.     Plaintiff is a citizen of El Salvador and currently resides at the El Centro Detention Facility in El Centro, California.

13.     Defendant CoreCivic is incorporated in Maryland and headquartered in Tennessee.

14.     Defendant CMA is incorporated in Tennessee and headquartered in Tennessee.

15.     Venue is proper in this District under 28 U.S.C. § 1391 and 15 U.S.C. § 22, because a "substantial part of the events or omissions" on which the claim is based occurred in this District.

/ / /

# FACTS

## I.    DEFENDANT'S EMPLOYEE SEXUALLY ASSAULTED PLAINTIFF

16.    Plaintiff is a native of El Salvador. In or around 2020, Plaintiff presented himself at San Ysidro wherein he sought Asylum.

17.    Plaintiff was detained at Otay located in San Diego, California.

18.    Defendant CoreCivic operates Otay.

19.    Plaintiff suffers from back pain from an accident that occurred in 2015.

20.    While detained at Otay, Plaintiff asked staff for health services related to his back pain, and specifically asked for an MRI, but staff only gave him an X-Ray.

21.    During Plaintiff's detainment at Otay, he received penile implants.[1]

22.    After receiving penile implants, Plaintiff's penis became infected.

23.    Plaintiff met with a doctor who prescribed antibiotics to treat Plaintiff's penile infection.

24.    Oscar Castillo, "Perpetrator," was employed by Defendants and worked as a Nurse Practitioner at Otay from September 2020 to August 2022.[2]

25.    Upon information and belief, CoreCivic is the parent company of CMA. CoreCivic's Chief Medical Officer is the President of CMA. CoreCivic directly hires all non-provider positions for its facilities while its subsidiary, CMA, employs CoreCivic's physicians, nurse practitioners, physician assistants, and psychiatrists. Health care professionals employed by CMA, such as Perpetrator, provide services exclusively for CoreCivic and are CMA and CoreCivic employees.

26.    Perpetrator initiated contact with Plaintiff after Plaintiff received medical treatment for his penile infection. Perpetrator asked Plaintiff what was wrong, and Plaintiff disclosed his back pain to Perpetrator.

---

[1] *See* Marina Kamenev, *The Problem With DIY Penis Implants*, THE ATLANTIC (Feb. 1, 2013), https://www.theatlantic.com/health/archive/2013/02/the-problem-with-diy-penis-implants/272766/ (discussing the widespread practice of male prisoners performing penile implants by inserting foreign bodies under the skin of the penis on themselves and each other).

[2] *See Oscar Castillo*, LINKEDIN (last accessed Nov. 13, 2023), https://www.linkedin.com/in/oscar-castillo-8471a417b.

27.   Perpetrator presented himself to Plaintiff as a doctor with significant authority and ability to address and treat Plaintiff's back pain. Plaintiff believed Perpetrator was a doctor with significant authority.

28.   Thus began an approximate year-long string of Perpetrator's sexual assaults of Plaintiff.

29.   Perpetrator presented his sexual assaults to Plaintiff as medical treatment for his penile implants or, in the alternative, as a condition for providing further medical care for Plaintiff's back injury.

30.   Framed as a condition for providing medical care for Plaintiff's back injury, Perpetrator sexually assaulted Plaintiff in exchange for, for example, setting up Plaintiff with physical therapy for several months.

31.   Perpetrator took a special interest in Plaintiff's penile implants and touched and examined them. Typically, Perpetrator would force Plaintiff's back to the door, have Plaintiff pull down his pants, and proceed to masturbate Plaintiff and rub Plaintiff's penile implants. During these assaults, Perpetrator would also ask Plaintiff about his sex life.

32.   Framed as medical treatment for Plaintiff's penile implants, Perpetrator would insert needles into Plaintiff's penis to draw out fluid.

33.   There were times when Perpetrator summoned Plaintiff, Plaintiff did not comply, and refused to submit himself to Perpetrator. Perpetrator would get upset when this happened.

34.   Upon information and belief, every medical examination of a detainee involved summoning the detainee, chaperoning the detainee, and/or constantly tracking the detainee's whereabouts.

35.   The sexual assaults occurred multiple times per week for one (1) year. The last sexual assault occurred on or around August 12, 2022.

36.   Upon information and belief, Perpetrator sexually assaulted other detainees.

37.     As a result of the repeated sexual assaults, Plaintiff has suffered and continues to suffer physical pain, emotional distress, psychological trauma, and mental deterioration.

## II.     CALIFORNIA ENACTED GOVERNMENT CODE SECTION 7320 TO PROTECT PEOPLE WITHIN ITS BORDERS FROM ABUSE BY PRIVATE PRISONS

### A.     For-Profit Prison Companies Harm People to Maximize Profits

38.     Defendants and their employees' actions, and lack thereof, are consistent with its business model. For-profit prison companies are some of the most harmful, exploitative institutions in our society. These companies generate billions of dollars in profit by keeping human beings in cages, cutting costs wherever possible, and forcing the people in their care to suffer.

39.     In 2016, the U.S. Department of Justice's Office of Inspector General published a review of for-profit prison companies with which the Federal Bureau of Prisons contracted, including CoreCivic (formerly Corrections Corporation of America and referred to within the review as "CCA"), finding that facilities run by for-profit companies had worse safety and security outcomes than government-run facilities in almost every aspect.[3] That year, Deputy Attorney General Sally Q. Yates issued a letter ordering the Bureau of Prisons to begin the process of reducing, and ultimately ending, its use of for-profit private prisons, including facilities run by Defendants.[4] She stated, "[for-profit prisons] simply do not provide the same level of correctional services, programs, or resources" as government-run facilities and "do not maintain the same level of safety and security."[5]

/ / /

/ / /

---

[3] Dep't of Just., Off. of Inspector Gen., *Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons* (Aug. 2016), at p. i-ii, https://oig.justice.gov/reports/2016/e1606.pdf.
[4] Sally Q. Yates, *Reducing our Use of Private Prisons*, DEP'T OF JUST. OFF. OF THE DEPUTY ATT'Y GEN. (Aug. 18, 2016), https://www.justice.gov/archives/opa/file/886311/download.
[5] *Id.*, at 1.

**B.      California Enacted Government Code Section 7320 to Protect People in California from Harm While Housed in For-Profit Detention Facilities**

40.      California enacted Government Code section 7320 to protect people in the state from being abused, exploited, and harmed by for-profit prison companies.[6] The legislation is an important exercise of police power to promote the health, safety, and welfare of California residents detained in for-profit facilities.[7]

41.      Government Code section 7320 requires "[a]ny private detention facility operator [to] comply with, and adhere to, the detention standards of care and confinement agreed upon in the facility's contract for operations."[8]

42.      The statute allows detainees to bring a civil suit for relief if they have been injured by a for-profit facility's, or persons acting on behalf of a for-profit facility's, tortious action in violation of the detention standards.[9]

43.      The relevant standards of care for Defendants and other for-profit detention facilities that contract with ICE are ICE's Performance-Based National Detention Standards ("PBNDS"). The standards were revised substantially in 2011, and again in 2016, to improve medical and mental health services, increase access to recreation, programs, and services, and improve the process for reporting and responding to complaints.[10]

**III.      DEFENDANTS VIOLATED MULTIPLE TERMS OF THEIR CONTRACT WITH ICE**

44.      As part of Defendants' contract with ICE, they are required to comply

---

[6] Staff of Cal. S. Jud. Comm., Bill Analysis of A.B. 3228 (Bonata), 2019-2020 Reg. Sess., at 1-2 (Aug. 10, 2020), https://sjud.senate.ca.gov/sites/sjud.senate.ca.gov/files/ab_3228_bonta_senate_judiciary_committee_analysis.pdf.

[7] *Id.*, at 9-10.

[8] Cal. Gov. Code § 7320(a).

[9] *Id.* § 7320(c).

[10] U.S. Imm. and Customs Enf't, *Performance-Based National Detention Standards 2011* (Revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.

with ICE's PBNDS.[11] The PBNDS establish the minimum requirements for treatment of people in ICE custody.

45.    Among the standards required by the PBNDS are minimum policies, procedures, and expected outcomes for a Sexual Abuse or Assault Prevention and Intervention Program[12] and staff training.[13]

46.    PBDNS section 2.11(V) delineates expected practices pertaining to sexual abuse and assault prevention and intervention. PBDNS section 2.11(V), subdivision (E) regards staff training, and mandates that employee training shall include: "definitions and examples of prohibited and illegal sexual behavior"; "recognition of situations where sexual abuse and/or assault may occur"; and "recognition of the physical, behavioral and emotional signs of sexual abuse and/or assault and ways to prevent and respond to such occurrences[.]"

47.    On information and belief, Defendants failed to abide by PBNDS section 2.11(V)(E) by failing to provide, pursuant to Section 2.11(V)(E), training to their staff pertaining to sexual abuse and assault prevention and intervention. Because of these failures, Defendants' employees did not recognize or were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go, and did not protect Plaintiff, thereby enabling Perpetrator's sexual assaults of Plaintiff. Had Defendants' employees received training pursuant to Section 2.11(V), Defendants' employees would have recognized, been alert to, and intervened in Perpetrator's sexual assaults of Plaintiff. Defendants' employees who failed to recognize, be alert to, and intervene in Perpetrator's sexual assaults of Plaintiff were operating within the scope of their employment with Defendants.

48.    PBNDS section 7.3(V) provides that "[t]he facility administrator shall

---

[11] *Id.*
[12] *See* PBNDS, section 2.11.
[13] *See* PBNDS, section 7.3.

ensure that the facility conducts appropriate orientation, initial training and annual training for all staff, contractors and volunteers, consistent with this standard and with appropriate assessment measures." Under PBNDS section 7.3(V), subdivision (B) provides that "[e]ach new employee, contractor, and volunteer shall be provided training prior to assuming duties" including, but not limited to "code of ethics[,]" "staff rules and regulations[,]" and "sexual abuse/sexual misconduct awareness and reporting." Under PBNDS section 7.3(V), subdivision (C) provides that "[e]ach new employee, contractor, and volunteer shall be provided initial and annual training appropriate to their assignments" and specifically, the training program for "[p]rofessional and support employees […] who have regular or daily detainee contact" shall include "sexual harassment and sexual misconduct awareness (including the contents of standard '2.11 Sexual Abuse and Assault Prevention and Intervention')[,]" "appropriate conduct with detainees[,]" and "code of ethics[.]"

49. On information and belief, Defendants failed to abide by PBNDS section 7.3(V) by failing to provide, pursuant to Section 7.3(V), initial training to their staff regarding sexual abuse and sexual misconduct awareness and reporting and/or failing to provide, pursuant to Section 7.3(V), annual training to its staff regarding the same under the standards articulated by PBNDS section 2.11 Sexual Abuse and Assault Prevention and Intervention. Because of these failures, Defendants' employees were not trained, or not adequately trained on sexual abuse and sexual misconduct awareness and reporting, failed to abide by the standards in PBNDS section 2.11, and thereby enabled Perpetrator's sexual assaults of Plaintiff. Defendants' employees who failed to provide initial training and annual training to their staff regarding sexual abuse and sexual misconduct awareness and reporting were operating within the scope of their employment with Defendants.

50. PBNDS section 2.11(II) delineates expected outcomes of PBNDS section 2.11(V) expected practices. PBDNS section 2.11(II) provides the expected outcome that "[s]taff shall be alert to potential risks or signs of sexual abuse or assault,

and take appropriate action to mitigate any identified risks or protect a detainee as necessary[.]"

51.    Defendants and their employees failed to abide by PBNDS section 2.11(II) when  they failed to be alert to potential risks and signs of Perpetrator's sexual assaults of Plaintiff, take appropriate action to mitigate the clear identifiable risks, and protect Plaintiff. Because of these failures, Defendants' employees did not recognize or were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go, and did not protect Plaintiff. Defendants' employees thereby enabled Perpetrator's sexual assaults of Plaintiff. Defendants' employees who failed to recognize, be alert to, and intervene in Perpetrator's sexual assaults of Plaintiff were operating within the scope of their employment with Defendants.

52.    PBNDS section 2.11(V)(I) regards prevention and states, "[a]ll staff and detainees are responsible for being alert to signs of potential situations in which sexual assaults might occur, and for making reports and intervention referrals as appropriate."

53.    Defendants and their employees failed to abide by PBNDS section 2.11(V)(I) by failing to be alert to the obvious signs of situations concerning Perpetrator and Plaintiff in which sexual assaults occurred. Defendants' employees were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go. Defendants' employees thereby enabled Perpetrator's sexual assaults of Plaintiff. Defendants' employees who failed to be alert to and report Perpetrator's sexual assaults of Plaintiff were operating within the scope of their employment with Defendants.

54.    Defendants' employees' actions, and failures to act, all occurred while they were at Otay and during their working hours, the employees acted in service to Defendants, and their operation of Otay, rather than in their own interests, and these

actions were the kind that Defendants hired employees to perform on their behalf.

## FIRST CAUSE OF ACTION

### Violation of Cal. Gov. Code § 7320

### [Cal. Gov. Code § 7320]

### [Against All Defendants]

55. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

56. At all times relevant, Defendants are private detention facility owners and operators.

57. At all times relevant, Defendants employed Perpetrator as a nurse practitioner at Otay.

58. Defendants are legally required to exercise a duty of ordinary care and skill in compliance with and adherence to the detention standards of care and confinement agreed upon in the Facility's contract for operations.

59. ICE's PNBDS are the applicable detention standards for care and confinement that Defendants agreed to abide by in their contract to operate Otay.

60. Defendants are legally required to exercise a duty of ordinary care and skill in their compliance with and adherence to ICE's PBNDS.

61. Upon information and belief, Defendants violated ICE's PBNDS section 2.11 when they failed to provide training to their staff pertaining to sexual abuse and assault prevention and intervention.

62. As a result of this violation of the PBNDS, Defendants' employees did not recognize or were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go, and did not protect Plaintiff, thereby enabling Perpetrator's sexual assaults of Plaintiff.

63. Upon information and belief, Defendants violated ICE's PBNDS section

7.3 when they failed to provide, pursuant to Section 7.3(V), initial training and/or annual training to its staff regarding sexual abuse and sexual misconduct awareness and reporting.

64.     As a result of this violation of the PBNDS, Defendans' employees were not trained, or not adequately trained, failed to abide by the standards in PBNDS section 2.11, thereby enabling Perpetrator's sexual assaults of Plaintiff.

65.     Defendants violated ICE's PBNDS section 2.11 when they failed to provide instruction to Plaintiff regarding staff-on-detainee sexual abuse and coercive sexual activity and information about self-protection and indicators of sexual abuse.

66.     As a result of this violation of the PBNDS, Plaintiff was not able to protect himself and/or recognize as sexual abuse Perpetrator's acts framed as medical treatment or, in the alternative, as a condition for providing further medical care for Plaintiff's back injury.

67.     CoreCivic and their employees violated ICE's PBNDS section 2.11 when their employees failed to be alert to potential risks and signs of Perpetrator's sexual assaults of Plaintiff, take appropriate action to mitigate the clear identifiable risks, and protect Plaintiff.

68.     As a result of this violation of the PBNDS, Defendants' employees did not recognize or were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go, did not protect Plaintiff, and thereby enabled Perpetrator's sexual assaults of Plaintiff.

69.     Defendants and their employees violated ICE's PBNDS section 2.11 when their employees failed to be alert to the signs of situations concerning Perpetrator and Plaintiff in which sexual assaults occurred.

70.     As a result of this violation of the PBNDS, Defendants' employees were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal

to go, and thereby enabled Perpetrator's sexual assaults of Plaintiff.

71.   Defendants' violations of the PBNDS caused Plaintiff's injuries, including physical pain, emotional distress, psychological trauma, and mental deterioration.

72.   Defendants did not exercise ordinary care, as they failed to comply or substantially comply with the PBNDS.

## SECOND CAUSE OF ACTION

### Negligence

### [Against All Defendants]

73.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

74.   At all times relevant, as described herein-above, Perpetrator worked as a nurse practitioner for Defendants at Otay, and was an actual, ostensible, and/or apparent agent and servant of Defendants. Perpetrator practiced medicine exclusively at Otay while employed by Defendants.

75.   At all times relevant, as the operator of the facility where Plaintiff was detained, Defendants were in a special relationship with Plaintiff, having total control of Plaintiff's life and absolute power to damage his health, safety, and wellness. Pursuant to this special relationship, Defendants owed a duty of care to warn and protect Plaintiff from foreseeable harm while he was a detainee under their control at Otay.

76.   Defendants knew or should have known of Perpetrator's propensity to engage in sexual misconduct. Perpetrator took an interest in examining detainees with health issues related to their penises, which was open and obvious, as, upon information and belief, every medical examination of a detainee required Defendants' employees' summoning, chaperoning, and/or tracking the detainee's whereabouts. Plaintiff sought treatment for an infection related to his penile implant, and only after

Plaintiff's penile implant information was added to his chart did Perpetrator initiate contact with Plaintiff. Perpetrator summoned Plaintiff multiple times per week for one (1) year. Defendants' employees summoned Plaintiff, chaperoned Plaintiff, and/or tracked Plaintiff's delivery to the examination room wherein Perpetrator committed sexual assaults upon Plaintiff, on information and belief, that Perpetrator would physically violate Plaintiff in a sexual manner.

77.     Defendants' employees summoned Plaintiff, chaperoned Plaintiff, and/or tracked Plaintiff's delivery to an examination room and permitted Perpetrator to commit these physical intrusions or invasions with knowledge, on information and belief, that Perpetrator would physically violate Plaintiff in a sexual manner.

78.     Defendants breached their duty of care to Plaintiff by allowing Perpetrator to repeatedly sexually assault Plaintiff throughout the course of one (1) year by:

    a.     Upon information and belief, failing to train staff pertaining to sexual abuse and assault awareness, reporting, prevention, and intervention;

    b.     Failing to provide instruction to Plaintiff regarding staff-on-detainee sexual abuse, coercive sexual activity, self-protection, and indicators of sexual abuse;

    c.     Failing to monitor dispensed and administered medications;

    d.     Failing to monitor examinations and treatments;

    e.     Failing to be alert to foreseeable, potential risks and signs of Perpetrator's sexual assaults of Plaintiff and/or take appropriate action to mitigate the clear identifiable risks.

79.     Defendants' lack of care and/or their extreme departure from what a reasonably careful detention facility and its employees would do in the same situation to prevent harm to individuals in its control, including Plaintiff, constituted gross negligence. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

80.     As a result of Defendants' conduct, Plaintiff suffered injuries including

but not limited to, physical and mental pain and suffering, emotional distress, physical injuries, past and future costs of medical care and treatment, and other damages, in amounts not yet ascertained but which exceed the minimum jurisdictional limits of this Court.

## THIRD CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### [Against All Defendants]

81.    Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

82.    Defendants' subjection of Plaintiff to and failure to protect him from repeated sexual assaults by their employee over the course of one (1) year was so extreme or outrageous as to exceed all bounds of that usually tolerated in a civilized community. Defendants' outrageous conduct toward Plaintiff was not routine, nor behavior that an individual in their care should be expected to endure and/or tolerate.

83.    At all relevant times, Defendants intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, by their conduct, as described herein.

84.    Plaintiff suffered severe emotional distress from Defendants' failure to provide initial and/or annual training to its staff pertaining to sexual abuse and assault awareness, reporting, prevention, and intervention, failure to provide instruction to Plaintiff regarding staff-on-detainee sexual abuse and coercive sexual activity, self-protection, and indicators of sexual abuse, and/or, failure to be alert to potential risks and signs of Perpetrator's sexual assaults of Plaintiff, take appropriate action to mitigate the clear identifiable risks, and protect Plaintiff.

85.    As a result of Defendants' conduct, Plaintiff suffered severe emotional distress including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame so substantial or long lasting that no reasonable

person in a civilized society should be expected to bear it, all to his damage in an amount to be established according to proof at trial. Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

86.     Moreover, Perpetrator intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, by his repeated sexual assaults of Plaintiff over the course of one (1) year.

87.     Perpetrator's conduct was so extreme or outrageous as to exceed all bounds of that usually tolerated in a civilized community, and was not routine, nor behavior that an individual in his care should be expected to endure and/or tolerate, particularly, as part of a trusted nurse-patient relationship.

88.     As a result of Perpetrator's conduct, Plaintiff suffered severe emotional distress including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame so substantial or long lasting that no reasonable person in a civilized society should be expected to bear it, all to his damage in an amount to be established according to proof at trial. Perpetrator's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

89.     Defendants are strictly liable for Perpetrator's intentional infliction of emotional distress of Plaintiff under the principles of *respondeat superior* and/or other principles of vicarious liability and ratification. At all times, Perpetrator acted in the course and scope of his apparent and/or actual agency and servitude with Defendants, and his actions toward Plaintiff were foreseeable. Moreover, Defendants ratified Perpetrator's sexual misconduct toward Plaintiff. Defendants knew or should have known of Perpetrator's sexual misconduct toward Plaintiff, which was open and obvious given Perpetrator's initiation of contact with Plaintiff after Plaintiff's penile implant had been noted in his medical record, summoning of Plaintiff, and appointments with Plaintiff multiple times per week for one (1) year for which there was no medical necessity. Defendants egregiously refused to take any action because for-profit prison companies generate billions of dollars in profit by cutting costs

wherever possible and forcing the people in their care to suffer. Defendants failed to properly investigate Perpetrator's conduct. Managing agents and supervisors of Defendants hid Perpetrator's abuse, thereby permitting Perpetrator to abuse and harm Plaintiff.

90.    The oppressive conduct by Defendants and Perpetrator was willful, wanton, and malicious under California Civil Code section 3294. Defendants and Perpetrator acted with a conscious disregard of Plaintiff's rights, feelings, and emotional and physical well-being and health. Perpetrator hijacked the nurse-patient relationship that is predicated upon trust. Plaintiff, as a patient, was required, encouraged, and induced to reveal the most private and personal details of his life and physically expose himself, including his genitalia, to a nurse practitioner so he could physically violate him under the guise that what he was doing was necessary and for the purposes of medical care, or framed as a condition for providing medically necessary care for Plaintiff's back injury. There can be no greater violation of trust or harm to an individual's psyche than to use a medical examination or treatment not for the purpose of providing medical care but to further an individual's depraved, predatory, and sexually deviant behavior. Defendants knew or should have known of Perpetrator's sexual misconduct toward Plaintiff, but sacrificed Plaintiff, by continuing to maintain Perpetrator as a medical staff member and by turning a blind eye to his depraved misconduct toward Plaintiff for the purpose of cutting costs wherever possible. As such, Perpetrator and Defendants should be liable for exemplary and punitive damages in an amount according to proof at trial as punishment for their despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's right to dignity and bodily autonomy, and as an example to others.

/ / /

/ / /

/ / /

# FOURTH CAUSE OF ACTION

## Sexual Harassment

## [Cal. Civ. Code § 51.9]

## [Against all Defendants]

91.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

92.     California Civil Code section 51.9, subdivision (a) provides a cause of action for sexual harassment when certain conditions are met, as set forth by the statute, and as they exist under the circumstances described herein. Damages shall be awarded as provided by Civil Code section 52, subdivision (b) in such an action. (Civ. Code § 51.9(b).)

93.     At all times relevant, as described herein-above, a professional relationship existed between Perpetrator as a nurse practitioner and Plaintiff as a patient. At all times relevant, as described herein-above, Perpetrator worked as a nurse practitioner for Defendants at Otay, and was an actual, ostensible, and/or apparent agent and servant of Defendants. The relationship between Perpetrator and Plaintiff existed under the supervision of Defendants.

94.     At all times relevant, as described herein-above, a professional relationship existed between Defendants and Plaintiff for the provision of medical care.

95.     At all times relevant, as described herein-above, Perpetrator, individually, and as an actual, ostensible and/or apparent agent, servant and/or medical staff member of Defendants, engaged in physical conduct of a sexual nature or of a hostile nature based on Plaintiff's gender status as a man that was unwelcome and pervasive or severe.

96.     A corporation is a "person" within the meaning of California Civil Code section 51.9 and may be held liable for sexual abuse. (*C.R. v. Tenet Healthcare Corp.*

(2009) 169 Cal.App.4th 1094.) Principles of ratification apply when the principal authorized the tortious act or subsequently ratified an originally unauthorized harassment.

97.     Defendants ratified Perpetrator's sexual misconduct toward Plaintiff. Defendants knew or should have known of Perpetrator's sexual misconduct toward Plaintiff, which was open and obvious given Perpetrator's initiation of contact with Plaintiff after Plaintiff's penile implant had been noted in his medical record, summoning of Plaintiff, and appointments with Plaintiff multiple per week for one (1) year for which there was no medical necessity. Defendants egregiously refused to take any action because for-profit prison companies generate billions of dollars in profit by cutting costs wherever possible and forcing the people in their care to suffer. Defendants failed to properly investigate Perpetrator's conduct. Managing agents and supervisors of Defendants hid Perpetrator's abuse, thereby permitting Perpetrator to abuse and harm Plaintiff.

98.     As a result of Perpetrator and Defendants' conduct, Plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including physical and mental pain and suffering, emotional distress, physical injuries, past and future costs of medical care and treatment, and other damages, in amounts not yet ascertained but which exceed the minimum jurisdictional limits of this Court, or the violation of a statutory or constitutional right.

99.     The oppressive conduct by Defendants and Perpetrator was willful, wanton, and malicious under California Civil Code section 3294. Defendants and Perpetrator acted with a conscious disregard of Plaintiff's rights, feelings, and emotional and physical well-being and health. Perpetrator hijacked the nurse-patient relationship that is predicated upon trust. Plaintiff, as a patient, was required, encouraged, and induced to reveal the most private and personal details of his life and physically expose himself, including his genitalia, to a nurse practitioner so he could physically violate him under the guise that what he was doing was necessary and for

the purposes of medical care, or framed as a condition for providing medically necessary care for Plaintiff's back injury. There can be no greater violation of trust or harm to an individual's psyche than to use a medical examination or treatment not for the purpose of providing medical care but to further an individual's depraved, predatory, and sexually deviant behavior. Defendants knew or should have known of Perpetrator's sexual misconduct toward Plaintiff, but sacrificed Plaintiff, by continuing to maintain Perpetrator as a medical staff member and by turning a blind eye to his depraved misconduct toward Plaintiff for the purpose of cutting costs wherever possible. As such, Perpetrator and Defendants should be liable for exemplary and punitive damages in an amount according to proof at trial as punishment for their despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's right to dignity and bodily autonomy, and as an example to others.

100.   Plaintiff has incurred and will continue to incur attorney's fees and costs in the prosecution of this action. Plaintiff will seek recovery of all such fees and costs to the fullest extend allowable under the law in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### Sexual Battery

### [Cal. Civ. Code. § 1708.5]

### [Against all Defendants]

101.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

102.   Every person is bound, without contract, to abstain from injuring the person […] of another, or infringing upon any of his […] rights." (Cal. Civ. Code § 1708.)

103.   "A person commits a sexual battery who […]: (1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually

offensive contact with that person directly or indirectly results. [and] (3) Acts to cause an imminent apprehension [of a harmful or offensive contact] and a sexually offensive contact with that person directly or indirectly results." (Cal. Civ. Code § 1708.5(a)(1) and (3).)

104. "Intimate part" includes the "sexual organ […] of any person[.]" (Cal. Civ. Code § 1708.5(d).) "Offensive contact" is "contact that offends a reasonable sense of personal dignity." (Cal. Civ. Code § 1708.5(f).)

105. At all relevant times, Perpetrator intended and acted with the intent to cause a harmful and/or offensive contact with Plaintiff's most intimate parts, including but not limited to Plaintiff's penis, which would offend a reasonable sense of personal dignity.

106. Multiple times per week for approximately one (1) year, Perpetrator touched Plaintiff or caused Plaintiff to be touched on his penis under the guise of performing a medically necessary procedure, with the intent to harm or offend his personal dignity, and violated his right to freedom from intentional, harmful, unconsented contact with his body. A sexually offensive contact resulted. A reasonable person in Plaintiff's situation, with knowledge of Perpetrator's inappropriate intent, would have been offended by the touching.

107. At no time during these incidents did Plaintiff consent to Perpetrator's touching by words, acts, silence, or inaction.

108. Defendants are strictly liable for Perpetrator's intentional infliction of emotional distress of Plaintiff under the principles of *respondeat superior* and/or other principles of vicarious liability and ratification. At all times, Perpetrator acted in the course and scope of his apparent and/or actual agency and servitude with Defendants, and his actions toward Plaintiff were foreseeable. Moreover, Defendants ratified Perpetrator's sexual misconduct toward Plaintiff. Defendants knew or should have known of Perpetrator's sexual misconduct toward Plaintiff, which was open and obvious given Perpetrator's initiation of contact with Plaintiff after Plaintiff's penile

implant had been noted in his medical record, summoning of Plaintiff, and appointments with Plaintiff multiple times per week for approximately one (1) year for which there was no medical necessity. Defendants egregiously refused to take any action because for-profit prison companies generate billions of dollars in profit by cutting costs wherever possible and forcing the people in their care to suffer. Defendants failed to properly investigate Perpetrator's conduct. Managing agents and supervisors of Defendants hid Perpetrator's abuse, thereby permitting Perpetrator to abuse and harm Plaintiff.

109. As a direct result of Perpetrator's conduct, Plaintiff suffered injuries including but not limited to, physical and mental pain and suffering, emotional distress, physical injuries, past and future costs of medical care and treatment, and other damages, in amounts not yet ascertained but which exceed the minimum jurisdictional limits of this Court.

110. The oppressive conduct by Defendants and Perpetrator was willful, wanton, and malicious under California Civil Code section 3294. Defendants and Perpetrator acted with a conscious disregard of Plaintiff's rights, feelings, and emotional and physical well-being and health. Perpetrator hijacked the nurse-patient relationship that is predicated upon trust. Plaintiff, as a patient, was required, encouraged, and induced to reveal the most private and personal details of his life and physically expose himself, including his genitalia, to a nurse practitioner so he could physically violate him under the guise that what he was doing was necessary and for the purposes of medical care, or framed as a condition for providing medically necessary care for Plaintiff's back injury. There can be no greater violation of trust or harm to an individual's psyche than to use a medical examination or treatment not for the purpose of providing medical care but to further an individual's depraved, predatory, and sexually deviant behavior. Defendants knew or should have known of Perpetrator's sexual misconduct toward Plaintiff, but sacrificed Plaintiff, by continuing to maintain Perpetrator as a medical staff member and by turning a blind

eye to his depraved misconduct toward Plaintiff for the purpose of cutting costs wherever possible. As such, Perpetrator and Defendants should be liable for exemplary and punitive damages in an amount according to proof at trial as punishment for their despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's right to dignity and bodily autonomy, and as an example to others.

111.   Plaintiff has incurred and will continue to incur attorney's fees and costs in the prosecution of this action. Plaintiff will seek recovery of all such fees and costs to the fullest extent allowable under the law in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**Gender Violence**

**[Cal. Civ. Code § 52.4]**

**[Against all Defendants]**

112.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

113.   California Civil Code section 52.4 provides that "any person who has been subjected to gender violence may bring a civil action for damages against any responsible party" and such person "may seek actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief" in addition to an award of attorney's fees and costs. (Civ. Code § 52.4(a).)

114.   "Gender violence" is defined in Civil Code section 52.4, subdivision (c) as "a form of sex discrimination and means either of the following: (1) One or more acts that would constitute a criminal offense under state law that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, committed at least in part based on the gender of the victim, whether or not those acts have resulted in criminal complaints, charges, prosecution,

or conviction. (2) A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction." (Civ. Code § 52.4(c).) As stated in Civil Code section 52.4, subdivision (d), "'gender' has the meaning set forth in Civil Code section 51": "'Gender' means sex, and includes a person's gender identity and gender expression." (Civ. Code §§ 51(e)(5); 52.4(d).)

115. As described herein, Perpetrator committed physical acts against Plaintiff's body that would constitute criminal offenses under state law that each have as an element the use, attempted use, or threatened use of physical force against the person of another, committed at least in part based on Plaintiff's status as a man.

116. As described hereinabove, Perpetrator committed a physical intrusion or physical invasion of a sexual nature to Plaintiff's most intimate parts, namely his penis, under coercive conditions. Such conditions were coercive because Plaintiff was required to place his trust in his physical and emotional well-being in Perpetrator, who was held out by Defendants to be a medical professional whom he could trust with his physical health and emotional well-being. Such conditions were coercive because they occurred while Plaintiff was physically restrained by Perpetrator. Such conditions were also coercive because Perpetrator performed these physical intrusions or invasions of Plaintiff's body without his consent. Such conditions were also coercive because Perpetrator performed these physical intrusions or invasions of Plaintiff's body under the guise that they were medically necessary procedures. Such conditions were also coercive because Perpetrator framed these physical intrusions or invasions of Plaintiff's body to Plaintiff as a condition for providing medical care to Plaintiff for his back injury.

117. While an employer may not be liable under California Civil Code section 52.4 merely because of its employer status, here, Defendants actively participated in the physical intrusion and invasion of Plaintiff's body at Otay. Defendants' employees summoned Plaintiff, chaperoned Plaintiff, and/or tracked Plaintiff's delivery to an

examination room and permitted Perpetrator to commit these physical intrusions or invasions with knowledge, on information and belief, that Perpetrator would physically violate Plaintiff in a sexual manner. Defendants were not only complicit in Perpetrator's acts, but also actively enabled and participated in the gender violence Plaintiff experienced.

118.   Plaintiff was harmed and suffered injuries including but not limited to, physical and mental pain and suffering, emotional distress, physical injuries, past and future costs of medical care and treatment, and other damages, in amounts not yet ascertained but which exceed the minimum jurisdictional limits of this Court. Perpetrator's conduct was a substantial factor in causing Plaintiff's harm.

119.   The oppressive conduct by Defendants and Perpetrator was willful, wanton, and malicious under California Civil Code section 3294. Defendants and Perpetrator acted with a conscious disregard of Plaintiff's rights, feelings, and emotional and physical well-being and health. Perpetrator hijacked the nurse-patient relationship that is predicated upon trust. Plaintiff, as a patient, was required, encouraged, and induced to reveal the most private and personal details of his life and physically expose himself, including his genitalia, to a nurse practitioner so he could physically violate him under the guise that what he was doing was necessary and for the purposes of medical care, or framed as a condition for providing medically necessary care for Plaintiff's back injury. There can be no greater violation of trust or harm to an individual's psyche than to use a medical examination or treatment not for the purpose of providing medical care but to further an individual's depraved, predatory, and sexually deviant behavior. Defendants knew or should have known of Perpetrator's sexual misconduct toward Plaintiff, but sacrificed Plaintiff, by continuing to maintain Perpetrator as a medical staff member and by turning a blind eye to his depraved misconduct toward Plaintiff for the purpose of cutting costs wherever possible. As such, Perpetrator and Defendants should be liable for exemplary and punitive damages in an amount according to proof at trial as

punishment for their despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's right to dignity and bodily autonomy, and as an example to others.

120.   Plaintiff has incurred and will continue to incur attorney's fees and costs in the prosecution of this action. Plaintiff will seek recovery of all such fees and costs to the fullest extend allowable under the law in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enter judgement in his favor and against Defendant as follows:

1.      Compensatory damages;

2.      Punitive damages;

3.      Attorneys' fees and costs; and

4.      All such other and further relief as the Court may deem just, proper, and equitable.

DATED:  January 11, 2024          BOUCHER LLP

By:  _____
        RAYMOND P. BOUCHER
        ALEXANDER GAMEZ
        MICHAEL GORELIK
        SEENA PAUL

        *Attorneys for Alexis Zelaya Gonzalez*

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all claims in this litigation.

DATED: January 11, 2024          BOUCHER LLP


By: _____
RAYMOND P. BOUCHER
ALEXANDER GAMEZ
MICHAEL GORELIK
SEENA PAUL

*Attorneys for Alexis Zelaya Gonzalez*

COMPLAINT