Dana M. Keene, CA Bar #324993
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 W. Ray Road, Ste. 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1695
dkeene@strucklove.com

WITHAM MAHONEY & ABBOTT, LLP
Matt Mahoney, Esq., CA Bar # 211184
401 B Street, Suite 2220
San Diego, CA 92101
Tel.: (619) 407-0505
Fax: (619) 872-0711
mahoney@wmalawfirm.com

*Attorneys for Defendants CoreCivic, Inc.
and Correctional Medicine Associates, P.C.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Alexis Zelaya Gonzalez, | NO. 3:24-cv-00087-JAH-BLM |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| CoreCivic, Inc., et al., | Date: April 3, 2024 |
| Defendants. | Time: 2:30 p.m. |
| | Courtroom: 4D |
| | Judge:  Honorable John A. Houston |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.  BACKGROUND ............................................................................................. 1

II.  PLAINTIFF FAILS TO STATE PLAUSIBLE CLAIMS UNDER RULE
    12(b)(6) .......................................................................................................... 4

    A.  Plaintiff's Direct Claims for Negligent Supervision and Training
    Claims Asserted in Court Two Should be Dismissed ............................. 6

        1.  Negligent Supervision ................................................................. 6

        1.  Negligent Training ....................................................................... 8

    B.  Plaintiff's IIED Claim Should be Dismissed ....................................... 10

        1.  Plaintiff has failed to sufficiently plead severe emotional distress
    to satisfy an IIED claim ............................................................ 10

        2.  Plaintiff fails to state a claim for IIED against Defendants
    directly ...................................................................................... 11

        3.  Plaintiff fails to state a claim for IIED against Defendants based
    on vicarious liability ................................................................. 12

        4.  Plaintiff fails to state an IIED claim against Defendants based
    upon a theory of ratification .................................................... 15

    C.  Plaintiff's Sexual Harassment Claim Pursuant to Cal. Civ. Code § 51.9
    Should be Dismissed ............................................................................ 16

    D.  Plaintiff's Sexual Battery Claim Pursuant to Cal. Civ. Code § 1708.5
    Should be Dismissed ............................................................................ 18

    E.  Plaintiff's Punitive Damages Claims Under Cal. Civ. Code § 3294
    Should be Dismissed ............................................................................ 20

    F.  Does 1-50 Should be Dismissed ........................................................... 21

III.  CONCLUSION ............................................................................................. 22

Defendants' Motion to Dismiss
Plaintiff's Complaint
    i
    3:24-cv-00087-JAH-BLM

1

## TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4

*Alexander v. Cmty. Hosp. of Long Beach,*
   259 Cal. Rptr. 3d 340 (Ct. App. 2020) ................................................6

5

*Andrade v. Arby's Rest. Grp., Inc.,*
   225 F. Supp. 3d 1115 (N.D. Cal. 2016) .........................................15, 16

6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...............................................................4, 5

7

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (1986) ..................................................................4

8

*Christensen v. Superior Ct.,*
   2 Cal. Rptr. 2d 79 (1991) ....................................................8, 11, 12

9

*Crouch v. Trinity Christian Center of Santa Ana, Inc.,*
   253 Cal. Rptr. 3d 1 (Ct. App. 2019) .........................................12, 14

10

11

*Delfino v. Agilent Techs., Inc.,*
   52 Cal. Rptr. 3d 376 (Ct. App. 2006) ...............................................6

12

*Duronslet v. Cnty. of Los Angeles,*
   266 F. Supp. 3d 1213 (C.D. Cal. 2017) ...............................................7

13

*Estate of Mejia v. Archambeault,*
   2021 WL 4428990 (S.D. Cal. Sept. 27, 2021) ......................................17

14

15

*Farmers Ins. Group v. County of Santa Clara,*
   47 Cal. Rptr. 2d 478 (1995) ................................................13, 14, 19

16

*Federico v. Superior Ct. (Jenry G.),*
   69 Cal. Rptr. 2d 370 (Ct. App. 1997) ...............................................6

17

18

*Garcia ex rel. Marin v. Clovis Unified Sch. Dist.,*
   627 F. Supp. 2d 1187 (E.D. Cal. 2009) .........................................8, 15

19

*Gillespie v. Civiletti,*
   629 F.2d 637 (9th Cir. 1980) ......................................................21

20

21

*Hughes v. Pair,*
   95 Cal. Rptr. 3d 636 (2009) ...................................................10, 12

22

*In re Stacs Elecs. Sec. Litig,*
   89 F.3d 1399 (9th Cir. 1996) ......................................................5

23

24

*John R. v. Oakland United School Dist.,*
   48 Cal. 3d 438 (1989) .............................................................13

25

*Keavney v. Cnty. of San Diego,*
   2021 WL 107243 (S.D. Cal. Jan. 12, 2021) ..........................................9

26

*Kephart v. Genuity, Inc.,*
   38 Cal. Rptr. 3d 845 (Ct. App. 2006) .........................................12, 13

27

*Lamb v. Floor & Décor Outlets of Am., Inc.,*

28

No. 13CV0390 JAH (BLM), 2014 WL 12570175 (S.D. Cal. Mar. 28, 2014) ....21

*Lisa M. v. Henry Mayo Newhall Memorial Hospital,*
   12 Cal. 4th 291 (1995)..................................................................13, 14

*Palacios v. County of San Diego,*
   Case No. 20-cv-450-MMA (DEB), 2020 WL 4201686 (S.D. Cal. July 22, 2020)
   ...............................................................................................................11

*Phillips v. TLC Plumbing, Inc.,*
   91 Cal. Rptr. 3d 864 (Ct. App. 2009) ....................................................9

*Rakestraw v. Rodrigues,*
   8 Cal. 3d 67 (1972)..............................................................................15

*Sabatini v. California Bd. of Registered Nursing,*
   No. 18-CV-2036-AJB-AGS, 2019 WL 6782946 (S.D. Cal. Dec. 12, 2019).......22

*State Farm Fire & Casualty Co. v. Keenan,*
   216 Cal. Rptr. 318 (Ct. App. 1985) ....................................................8, 9

*Steel v. City of San Diego,*
   726 F. Supp. 2d 1172 (S.D. Cal. 2010) ...............................................10

*U.S. E.E.O.C. v. Glob. Horizons, Inc.,*
   2011 WL 5325747 (D. Haw. Nov. 2, 2011)............................................5

*Weinstein v. Preferred Home Mortg. Co.,*
   2919 WL 3927675 (D. Nev. Oct. 6, 2010)..............................................5

*White v. Ultramar, Inc.,*
   21 Cal. 4th 563 (1999)..........................................................................20

*Woo v. Home Loan Grp., L.P.,*
   No. 07-CV-0202-H, 2007 WL 6624925 (S.D. Cal. July 27, 2007) ....................22

Statutes

Cal. Civ. Code § 51.........................................................................................17
Cal. Civ. Code § 51.9................................................................................passim
Cal. Civ. Code § 51.9(a)(1) ....................................................................16, 17
Cal. Civ. Code § 51.9(a)(2) ............................................................................17
Cal. Civ. Code § 51.9(a)(2)–(3)......................................................................17
Cal. Civ. Code § 51.9(a)(3) ............................................................................17
Cal. Civ. Code § 52.4.........................................................................................1
Cal. Civ. Code § 1708.5............................................................................passim
Cal. Civ. Code § 1708.5(a)..............................................................................18
Cal. Civ. Code § 3294...............................................................................passim
Cal. Civ. Code § 3294(a)..................................................................................20
Cal. Civ. Code § 3294(b)..................................................................................20
Cal. Gov. Code § 7320 .......................................................................................4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rules

Fed. R. Civ. P. 8(a)(2) ............................................................................................... 6
Fed. R. Civ. P. 12(a)(4) .............................................................................................. 1
Federal Rule of Civil Procedure 8 ........................................................................ 4, 5
Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 4

Other Authorities

Rest. 3d Agency, § 7.05 .............................................................................................. 9

**MOTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants CoreCivic, Inc. ("CoreCivic") and Correctional Medicine Associates, P.C. ("CMA") (collectively, "Defendants") move to dismiss the following claims asserted in Plaintiff's Complaint (Dkt. 1): (1) direct negligence claims for negligent supervision and training in Count Two; (2) intentional infliction of emotional distress in Count Three; (3) sexual harassment pursuant to Cal. Civ. Code § 51.9 in Count Four; and (4) sexual battery pursuant to Cal. Civ. Code § 1708.5 in Count 5.[1]  Defendants also move for the dismissal of Does 1–50, and Plaintiff's claims for punitive damages under Cal. Civ. Code § 3294.  This Motion is supported by the following Memorandum of Points and Authorities.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND

Plaintiff Alexis Zelaya Gonzalez ("Plaintiff"), a citizen of El Salvador, claims that he is a United States Immigration and Customs Enforcement ("ICE") detainee who entered the United States in San Ysidro, California in approximately 2020. (Dkt. 1 at ¶¶ 1, 16.)  Plaintiff claims he was subsequently detained at Otay Mesa Detention Center ("OMDC") in San Diego, California from approximately 2020 to 2022, which he alleges is owned and operated by CoreCivic pursuant to a contract with ICE.  (*Id.* at ¶¶ 1, 6, 12, 16–18.)  He alleges that he is currently detained at the El Centro

---

[1] Defendants' Motion to Dismiss does not move for the dismissal of all claims asserted in Plaintiff's Complaint.  Defendants will answer all claims that are not otherwise dismissed pursuant to this Motion after they receive the Court's ruling in accordance with Fed. R. Civ. P. 12(a)(4) and/or if Plaintiff amends his complaint.

[2] The parties met and conferred on February 12, 2024, to discuss the basis of Defendants' Motion to Dismiss.  Defendants inquired into whether Plaintiff would cure the deficiencies in his complaint or otherwise dismiss certain claims, including his claim for Gender Violence pursuant to Cal. Civ. Code § 52.4 asserted in Count Six. (Dkt. 1 at ¶¶ 112-120.)  After the meet and confer, Plaintiff agreed to dismiss only the Gender Violence claim in its entirety. Accordingly, Defendants do not address Count Six in this Motion, but reserve their right to do so in the event Plaintiff fails to formally dismiss the claim at a later date.

Detention Facility in El Centro, California.  (*Id.* at ¶ 12.)

Plaintiff claims that during his detention at OMDC he received "penile implants," which he claims is a "widespread practice" where male prisoners cut open their penises and insert foreign objects under the skin of their penises.  (Dkt. 1 at ¶ 21, n.1.)  It is unclear from the Complaint who inserted the foreign object(s) into Plaintiff's penis (i.e., whether it was Plaintiff or another detainee), how many foreign objects were inserted, and whether foreign objects were inserted on more than one occasion.  It is *not* alleged that Defendants or their employees had any involvement in Plaintiff's "penile implants."  Nor is it alleged that this was a medically sanctioned procedure, or that it was medically necessary.[3]

Plaintiff claims that at some point his "penile implants" became infected.  (Dkt. 1 at ¶ 22.)  Plaintiff allegedly met with a doctor at OMDC, who prescribed him antibiotics.  (*Id.* at ¶ 23.)  He also alleges that he suffered from longstanding back pain stemming from an accident that occurred in 2015, and that he asked staff for health services related to his back pain, including an MRI, but was only provided with an x-ray.[4]  (*Id.* at ¶¶ 19–20.)

Plaintiff claims that Nurse Practitioner Oscar Castillo ("NP Castillo"), whom he refers to as the "Perpetrator," was employed by both CMA and CoreCivic at OMDC from approximately September 2020 to August 2022.  (Dkt. 1 at ¶¶ 24–25.)  He alleges that NP Castillo "initiated contact" with him on an undisclosed date after he received medical treatment for his penile infection, at which time Plaintiff complained of back pain.  (*Id.* at ¶ 26.)  He claims that this appointment spurred an approximately year-long string of NP Castillo's alleged sexual assaults on Plaintiff, which he claims occurred multiple times per week and ended on or around August

---

[3] Defendants affirmatively assert that "penile implants" are *not* provided to detainees at OMDC, are not permitted under facility rules, and are not authorized or recommended by security or medical personnel.

[4] Despite this allegation, Plaintiff does not appear to be asserting any medical malpractice or medical negligence claim.

12, 2022.  (*Id.* at ¶¶ 28, 35.)  Plaintiff alleges that NP Castillo "presented his sexual assaults to Plaintiff" as medical treatment for his penile implants or "as a condition" for providing medical care for his back injury.  (*Id.* at ¶¶ 29–30.)  He claims that NP Castillo "took special interest" in his penile implants and that he examined them, touched them, drew fluid out of his penis, "masturbated" him, and asked Plaintiff about his sex life, and that Plaintiff believed he was a "doctor with significant authority and ability to address and treat Plaintiff's back pain."  (*Id.* at ¶¶ 27, 31–32.)  Plaintiff claims that he refused to go to medical appointments at times, which upset NP Castillo.  (*Id.* at ¶ 34.)  He also alleges that, "[u]pon information and belief, Perpetrator sexually assaulted other detainees."  (*Id.* at ¶ 36.)

On January 11, 2024, Plaintiff filed a Complaint against CoreCivic, CMA, and Does 1–50.  (Dkt. 1.)  Plaintiff did not sue NP Castillo.  Instead, Plaintiff alleges that Defendants, as for-profit entities, were required to comply with ICE's Performance-Based National Detention Standards ("PBNDS"), which establish the "minimum requirements for treatment" of ICE detainees in custody.  (*Id.* at ¶¶ 43–44.)  Indeed, the majority of Plaintiff's allegations against Defendants pertain to California's enactment of Government Code Section 7320 and its requirement that private detention facility operators "comply with, and adhere to, the detention standards of care and confinement agreed upon in the facility's contract for operations," which contain "minimum policies, procedures, and expected outcomes for a Sexual Abuse or Assault Prevention and Intervention Program and staff training."  (*Id.* at ¶¶ 38–45, 48, 50.)  Plaintiff claims that Defendants failed to abide by specific PBNDS pertaining to staff training on sexual abuse and assault prevention and intervention.  (*Id.* at ¶¶ 46–47, 49, 52.)  Because of this, Plaintiff alleges that Defendants' employees "did not recognize or were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go and did not protect Plaintiff" or "mitigate the clear identifiable risks."  (*Id.* at ¶¶ 47, 49, 51, 53.)  Plaintiff claims that

if Defendants' employees were trained properly, they would have recognized, been alert to, and intervened in NP Castillo's sexual assaults on Plaintiff. (*Id.* at ¶ 47.) Plaintiff also alleges, albeit vaguely, that Defendants violated applicable PBNDS by failing to provide Plaintiff with "instruction" regarding staff-on-detainee sexual abuse, which prevented the Plaintiff from being able to recognize sexual abuse and/or to protect himself. (*See id.* at ¶¶ 65–66.)

Plaintiff asserts the following claims against all Defendants: (Count One) Violation of Cal. Gov. Code § 7320; (Count Two) Negligence; (Count Three) Intentional Infliction of Emotional Distress; (Count Four) Sexual Harassment under Cal. Civ. Code § 51.9; and (Count Five) Sexual Battery under Cal. Civ. Code § 1708.5. Plaintiff claims that he suffered and continues to suffer physical pain, emotional distress, psychological trauma, and mental deterioration as a result of the alleged sexual assaults. (*Id.* at ¶ 37.) He is seeking compensatory and punitive damages. (*Id.* at ¶¶ 80, 90, 98–99, 109–110, 118–119.)

## II.   PLAINTIFF FAILS TO STATE PLAUSIBLE CLAIMS UNDER RULE 12(b)(6).

To satisfy Federal Rule of Civil Procedure 8, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (1986)) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, a complaint must allege sufficient factual matter that is "plausible on its face." *Id.* Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility

and plausibility of 'entitlement to relief.'" *Id*.

Noticeably missing from the Complaint are allegations establishing that Defendants or any of its other employees, supervisors, or corporate actors knew or should have known that NP Castillo was allegedly sexually assaulting Plaintiff. Aside from vague speculation, there are likewise no allegations that Defendants or any of its employees witnessed the alleged sexual abuse, were aware that Plaintiff refused appointments or exhibited "hesitation" to attend appointments because of the alleged sexual abuse, or that the alleged sexual abuse was otherwise reported to Defendants or their employees by Plaintiff or any other detainee. Significantly, Plaintiff's allegations that Defendants knew or should have known that NP Castillo was sexually abusing Plaintiff based upon his frequent medical appointments, without more, is the definition of "unadorned, the-defendant-unlawfully-harmed-me accusation," which Rule 8 seeks to prevent. *See Iqbal*, 556 U.S. at 678; *In re Stacs Elecs. Sec. Litig*, 89 F.3d 1399, 1403 (9th Cir. 1996) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."); *see also Weinstein v. Preferred Home Mortg. Co.*, 2919 WL 3927675, at *3 (D. Nev. Oct. 6, 2010) (general allegations that a defendant "knew, or reasonably should have known" are insufficient to survive a motion to dismiss); *U.S. E.E.O.C. v. Glob. Horizons, Inc.*, 2011 WL 5325747, at *12 (D. Haw. Nov. 2, 2011) ("[A]ssuming a Moving Defendant should have known about Global's misconduct, it is unclear: (1) what specifically they should have known; (2) why should they have known it; and (3) how they could have known it.").

Moreover, Plaintiff has not sued NP Castillo. As such, Plaintiff's state law tort and statutory claims in Counts Two through Five are unclear, and confusingly assert a combination of direct liability claims and claims based on vicarious liability and/or ratification theories, all of which are separate and distinct legal theories. Deciphering the types of claims asserted against Defendants is onerous and tedious, which only bolsters Defendants' position that Plaintiff's claims violate Rule 8's "short and plain

1    statement of the claim" requirement.  *See* Fed. R. Civ. P. 8(a)(2).

2         For these reasons, and for the reasons below, Plaintiff fails to state the claims

3    enumerated in this Motion, and Defendants' Motion to Dismiss should be granted.

4         **A.    Plaintiff's Direct Claims for Negligent Supervision and Training Claims Asserted in Count Two Should be Dismissed.**

5         Although not specifically pled, in Count Two of his Complaint, Plaintiff

6    appears to assert only direct negligence claims against Defendants for negligent

7    supervision and training based upon their alleged failure to train staff and instruct

8    Plaintiff on sexual abuse, to monitor the medical care and treatment received by

9    Plaintiff, and to be alert to "foreseeable, potential risks and signs of Perpetrator's

10   sexual assaults of Plaintiff and/or take appropriate action to mitigate the clear

11   identifiable risks."  (*See* Dkt. 1 at ¶ 78.)  These allegations are insufficient to state

12   negligent supervision or training claims.

13         **1.    Negligent Supervision.**

14         "An employer can be held liable for negligent supervision if it knows or has

15   reason to believe the employee is unfit or fails to use reasonable care to discover the

16   employee's unfitness."  *Alexander v. Cmty. Hosp. of Long Beach,* 259 Cal. Rptr. 3d

17   340, 356 (Ct. App. 2020); *see also Federico v. Superior Ct. (Jenry G.)*, 69 Cal. Rptr.

18   2d 370, 375 (Ct. App. 1997) *as modified on denial of reh'g* (Dec. 8, 1997)

19   ("[L]iability for [negligent supervision] can be imposed only when the employer

20   knows, or should know, that the employee, because of past behavior or other factors,

21   is unfit for the specific tasks to be performed").  Liability for negligent supervision

22   of an employee is one of direct liability for negligence, not vicarious liability.  *Delfino*

23   *v. Agilent Techs., Inc.*, 52 Cal. Rptr. 3d 376, 397 (Ct. App. 2006).

24         The Complaint contains a single allegation that Plaintiff "believes" NP Castillo

25   sexually assaulted other detainees.  (Dkt. 1 at ¶ 36.)  In Count Two, he claims for the

26   first time that Defendants "knew or should have known of Perpetrator's propensity

27   to engage in sexual misconduct" because NP Castillo allegedly "took an interest in

28

examining detainees with health issues related to their penises, which was open and obvious." (*Id.* at ¶ 76.)  There are *no* allegations specifically indicating when or how NP Castillo allegedly sexually abused other detainees or took an interest in examining detainees with health issues related to their penises.   Nor are there allegations establishing that Defendants knew or should have known about these alleged occurrences or about NP Castillo's alleged propensity to engage in sexual misconduct because of them.  *See Duronslet v. Cnty. of Los Angeles*, 266 F. Supp. 3d 1213, 1217 (C.D. Cal. 2017) ("While Plaintiff makes the conclusory assertion that the County 'knew or should have known' that she was transgender, there are insufficient underlying facts showing how or why the County knew or should have known this."). Vague allegations that NP Castillo may have sexually abused other detainees prior to Plaintiff, and that he "took an interest" in examining detainees with health issues related to their penises—particularly because, as a *medical* provider, examining detainees for medical issues was within his job description—does not establish that Defendants knew or should have known that NP Castillo was unfit. Nor does it establish that Defendants failed to use reasonable care to discover his unfitness.

Further, while Plaintiff alleges that other unidentified employees "summoned Plaintiff, chaperoned [him], and/or tracked [his] delivery to the examination room" and permitted NP Castillo to sexually abuse Plaintiff with knowledge that NP Castillo would "physically violate Plaintiff in a sexual manner" (*see* Dkt. 1 at ¶¶ 76-77), these allegations are speculative and impermissible assumptions, particularly because there are *no* allegations specifically identifying any other employee or establishing that any other employee witnessed the alleged sexual abuse, knew about it, or suspected it.

Plaintiff further alleges that Defendants breached their duty of care by "failing to monitor dispensed and administered medications," "failing to monitor examinations and treatments," and "failing to be alert to foreseeable, potential risks and signs of Perpetrator's sexual assaults of Plaintiff and/or take appropriate action

to mitigate the clear identifiable risks." (Dkt. 1 at ¶ 78.)  Given Plaintiff's failure to include specific allegations regarding any other employee, it is unclear *who* failed to monitor what or who, how any other employee failed to be "alert" to the alleged sexual abuse, or that the alleged sexual abuse was indeed foreseeable based on "potential risks and signs."  Plaintiff's Complaint is devoid of allegations establishing any causal nexus between Defendants' other employees and the alleged injuries here, and Plaintiff's conclusory allegations regarding Defendants' other employees cannot form the basis of any claim asserted against Defendants.  *See Christensen v. Superior Ct.*, 2 Cal. Rptr. 2d 79, at 98 (1991) ("A plaintiff seeking to recover damages from a negligent defendant must allege a causal connection between the negligence and the plaintiff's injury.").

Thus, to the extent Plaintiff alleges a negligent supervision claim in Count Two, Plaintiff has failed to sufficiently plead negligent supervision based upon the alleged conduct of NP Castillo or any other employee, which warrants dismissal.

## 2.    Negligent Training.[5]

"A plaintiff alleging negligent training under California law must show that the employer negligently trained the employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff." *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009) (citing *State Farm Fire & Casualty Co. v. Keenan*, 216 Cal. Rptr. 318, 331 (Ct. App. 1985)).

Plaintiff's Complaint does not contain facts sufficient to establish that Defendants' training practices caused Plaintiff injury or that any of Defendants' other employees had reason to know that Defendants' training practices were deficient.

---

[5] Plaintiff's negligent training/failure to train claim asserted in Count Two is duplicative of Count One, which focuses entirely on Defendants' alleged failure to train in accordance with PBNDS.

Plaintiff alleges that Defendants breached their duty of care by "failing to train staff pertaining to sexual assault and abuse awareness, reporting, prevention, and intervention" and "[f]ailing to provide instruction to Plaintiff regarding staff-on-detainee sexual abuse, coercive sexual activity, self-protection, and indicators of sexual abuse." (Dkt. 1 at ¶ 78.) But, as stated above, Plaintiff's Complaint is devoid of specific factual allegations regarding any other employee. Vague allegations regarding groups of unidentified employees are simply not enough. *See Keavney v. Cnty. of San Diego*, 2021 WL 107243, at *4 (S.D. Cal. Jan. 12, 2021) (vague and conclusory allegations against a group of unidentified individuals are insufficient to state a plausible claim). And while the Complaint vaguely alleges that if employees were appropriately trained, they should have been able to recognize that NP Castillo was sexually abusing Plaintiff, it fails to include allegations specifying how or why any other employee was allegedly negligent *because of* his or her training.

Moreover, Plaintiff's allegations that Defendants' other employees should have recognized sexual abuse and taken appropriate action, when there are no allegations that any other employees witnessed the alleged sexual abuse or were otherwise put on notice of it, are insufficient to establish Defendants' allegedly negligent training or that a failure to train proximately caused the Plaintiff's alleged injuries. *See State Farm Fire & Cas. Co. v. Keenan*, 216 Cal. Rptr. at 331 (finding that any liability of the employer for negligent instruction is "wholly dependent upon and exclusively related" to an employee's conduct); *see Phillips v. TLC Plumbing, Inc.*, 91 Cal. Rptr. 3d 864, 869 (Ct. App. 2009) (quoting Rest. 3d Agency, § 7.05, com. c, illus. 5, p. 180) ("Liability under this rule also requires some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by the third party.").

Thus, Plaintiffs' conclusory allegations in Count Two are insufficient to state a direct claim for negligent training, and this claim should be dismissed.

**B.      Plaintiff's IIED Claim Should be Dismissed.**

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 95 Cal. Rptr. 3d 636, 651 (2009) (citations and quotation marks omitted). "A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*. at 1050–51 (quotations omitted).  Moreover, "severe emotional distress" means "emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Id*. at 1051.

Plaintiff appears to assert IIED claims against Defendants directly and based on theories of vicarious liability and/or ratification.  (Dkt. 1 at ¶¶ 82-89.)  He has failed to sufficiently state claims for IIED under any theory.

**1.      Plaintiff has failed to sufficiently plead severe emotional distress to satisfy an IIED claim.**

At the outset, and no matter what theory of liability his IIED claim falls under, Plaintiff's conclusory allegations that he "suffered severe emotional distress" are insufficient to meet the "high bar" required to establish IIED.  (Dkt. 1 at ¶ 85) *see Hughes,* 95 Cal. Rptr. 3d at 651 ("With respect to the requirement that the plaintiff show severe emotional distress, [the Supreme Court of California] has set a high bar.").  Indeed, Plaintiff's Complaint simply recites the elements of IIED—it is devoid of allegations demonstrating that he actually suffered the requisite severe and extreme distress. *See Steel v. City of San Diego,* 726 F. Supp. 2d 1172, 1191-92 (S.D. Cal. 2010) (dismissing IIED claim where plaintiff's allegation that he suffered "severe and extreme mental and emotional distress" was insufficient because he failed to allege facts demonstrating he suffered "emotional distress of such

substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."); *see also Palacios v. County of San Diego,* Case No. 20-cv-450-MMA (DEB), 2020 WL 4201686, at *22 (S.D. Cal. July 22, 2020) (finding plaintiff's allegations that she suffered "severe emotional distress" were conclusory and insufficient to show severe or extreme emotional distress).  Plaintiff has not satisfied the "severe emotional distress" element of his IIED claim.

### 2.   Plaintiff fails to state a claim for IIED against Defendants directly.

To sufficiently state a claim for IIED, Plaintiff must show that the Defendants' alleged conduct was *directed* at him.  *See Christensen,* 2 Cal. Rptr. 2d at 100 ("It is not enough that the conduct be intentional and outrageous.  It must be conduct directed at the plaintiff or occur in the presence of a plaintiff of whom the defendant is aware.").  Furthermore, the defendant "must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result."  *Id.* (quotations omitted).  Plaintiff's Complaint fails to allege facts establishing that Defendants engaged in *any* conduct that was directed at Plaintiff with the intention of causing, or with reckless disregard of the probability of causing, emotional distress upon him.  Indeed, all allegations regarding alleged sexual abuse are asserted against NP Castillo, not Defendants or any of its other employees.

As already stated, Plaintiff's Complaint is devoid of factual allegations establishing that Defendants were aware of the alleged sexual abuse or that Plaintiff made any attempt to report those claims. Plaintiff's allegations that Defendants should have been alerted to sexual abuse because Plaintiff had frequent appointments, or refused or was hesitant to go to appointments, is based upon pure conjecture, particularly where Plaintiff admits that he "suffer[ed] from back pain from an accident that occurred in 2015" and "[a]fter receiving penile implants, Plaintiff's penis became infected," which required medical treatment.  (Dkt. 1 at ¶¶ 19, 22.)  Conclusory statements are insufficient to establish that the Defendants'

alleged conduct was "extreme and outrageous" or that they intentionally caused or recklessly disregarded the probability of causing Plaintiff severe emotional distress to satisfy an IIED claim. *See Christensen,* 2 Cal. Rptr. 2d at 100–02 (dismissing IIED claim where plaintiffs failed to allege conduct "was directed primarily at them, was calculated to cause them severe emotional distress, or was done with knowledge of their presence and of a substantial certainty that they would suffer severe emotional injury.").

Furthermore, Plaintiff's allegations that Defendants failed to train its staff and failed to provide instructions to Plaintiff regarding sexual abuse do not constitute intentional and/or reckless conduct directed at Plaintiff.   Nor does Defendants' alleged failure to train or instruct amount to conduct that is so "outrageous" and "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes* 95 Cal. Rptr. 3d at 651.  Plaintiff has not adequately stated an IIED claim against Defendants directly, which warrants its dismissal.

### 3. Plaintiff fails to state a claim for IIED against Defendants based on vicarious liability.

An employer is vicariously liable for the tortious conduct of its employees so long as the employee's conduct was committed during the course and scope of employment. *Kephart v. Genuity, Inc.*, 38 Cal. Rptr. 3d 845, 852-53 (Ct. App. 2006). "The determination of scope of employment can be a difficult task," and a "variety of factors must be considered and weighed, including the intent of the employee; the nature, time and place of the employee's conduct; the work the employee was hired to do; the incidental acts the employer should reasonably expect the employee to do; [and] the amount of freedom allowed to the employee in performing his or her duties[.]" *Id.* at 292.  Courts have also recognized a foreseeability component of vicarious liability and consider whether the employee's conduct was "reasonably foreseeable in light of the employer's business." *See Crouch v. Trinity Christian Center of Santa Ana, Inc.*, 253 Cal. Rptr. 3d 1, 19 (Ct. App. 2019) (to determine

whether the employee's conduct is within the scope of employment the court considers "if the conduct either (1) is required by or incidental to the employee's duties, or (2) it is reasonably foreseeable in light of the employer's business.") *(*quotations omitted).

"An employer may be, but will not necessarily be, held vicariously liable for an employee's torts that are willful, malicious, or criminal." *Kephart*, 38 Cal. Rptr. 3d at 853 (citing *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291, 298 (1995)).  Indeed, courts have frequently held that an employee's sexual misconduct is beyond the course and scope of employment.  *See Lisa M.*, 12 Cal. 4th at 199–200 (California Supreme Court found that defendant hospital was not liable for employee's sexual molestation even though employment made it possible for him to meet and be alone with patient-plaintiff which made the assault possible, actions were not "generated by or an outgrowth of workplace responsibilities" and conduct was not foreseeable); *see also Farmers Ins. Group v. County of Santa Clara*, 47 Cal. Rptr. 2d 478, 497 (1995) (finding that employee's repeated sexual harassment was outside scope of employment such that respondeat superior liability did not apply and collecting cases of similar holdings); *John R. v. Oakland United School Dist.*, 48 Cal. 3d 438, 452–53 (1989) (same).

Here, Defendants cannot be found vicariously liable for any alleged sexual abuse or intentional conduct of NP Castillo based upon the facts alleged in Plaintiff's Complaint.  There are no allegations that Defendants or any of its employees were aware that the alleged sexual abuse was occurring or that NP Castillo was otherwise allegedly committing an intentional tort.  "That the employment brought [NP Castillo] and [Plaintiff] together in time and place is not enough." *Lisa M.*, 12 Cal. 4th at 298. This is particularly true where NP Castillo, as a medical provider, was tasked with examining and treating detainees such as Plaintiff for a myriad of health issues pursuant to his employment. Accordingly, Plaintiff's allegations, without more, fail to establish that NP Castillo's alleged intentional conduct was connected

to his employment—or was motivated by anything other than his own personal satisfaction or motives—to establish vicarious liability.  *See Crouch,* 253 Cal. Rptr. 3d at 19 (to impose vicarious liability on an employer "there must be a connection between the employee's intentional tort and the employee's work.") (quotations omitted); *see also Lisa M.,* 12 Cal. 4th at 306 ("by employing the technician and providing the ultrasound room, may have set the stage for his misconduct, but the script was entirely of his own, independent invention.")

In fact, Plaintiff's Complaint admits that "Perpetrator's conduct…was not routine." (Dkt. 1 at ¶ 87.) This allegation negates any attempt at alleging that the alleged abuse was foreseeable and/or "inherent in the working environment" to establish vicarious liability against Defendants.  *Lisa M.,* 12 Cal. 4th at 298.  Thus, Plaintiff has failed to plead sufficient facts to establish that any of NP Castillo's alleged intentional conduct and/or sexual abuse was committed during the course and scope of his employment, which is fatal to Plaintiff's claims that Defendants are vicariously liable for his conduct.  And, Plaintiff has failed to allege that Defendants are vicariously liable for IIED based upon the conduct of any other employee given Plaintiff's failure to adequately allege any specific allegations against other employees.

Finally, Plaintiff vaguely claims that Defendants are "strictly liable" for NP Castillo's intentional infliction of emotional distress against Plaintiff "under the principles of *respondeat superior* and/or other principles of vicarious liability and ratification." (Dkt. 1 at ¶ 89.)  It is well-established that "an employer is not strictly liable for all actions of its employees during working hours." *Farmers Ins. Group*, 47 Cal. Rptr. 2d at 487.  Thus, based on this vague allegation, Defendants cannot be strictly liable for NP Castillo's intentional tort.

Accordingly, Plaintiff's vicarious liability claim for IIED should be dismissed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**4.     Plaintiff fails to state an IIED claim against Defendants based upon a theory of ratification.**

Ratification is defined as either an authorization of a tortious act or "a voluntary election to adopt another's conduct as one's own." *Garcia,* 627 F. Supp. at 1201-02 (citing *Rakestraw v. Rodrigues,* 8 Cal. 3d 67, 73 (1972)).  Ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort.  *Id.* at 1202.  In addition, an inference of ratification may be supported where an employer retains an employee or fails to punish him after knowledge of the employee's conduct or an adequate opportunity to learn of the conduct.  *Id.*  To establish ratification by a corporate employer, Plaintiff must allege "circumstantial or direct evidence demonstrating the adoption or approval of the employee's actions by the corporate agent, which may be inferred from a failure by the employer to investigate an employee's acts once the employer has become aware of them." *Andrade v. Arby's Rest. Grp., Inc.,* 225 F. Supp. 3d 1115, 1130 (N.D. Cal. 2016) (quotations omitted).

Aside from conclusory assumptions, Plaintiff's Complaint is devoid of factual allegations establishing that Defendants were aware of NP Castillo's alleged conduct, much less that Defendants authorized this purported conduct or voluntarily adopted it.  Plaintiff's conclusory allegations that Defendants knew or should have known about the alleged sexual abuse because it was "open and obvious" given Plaintiff's numerous medical appointments is pure speculation, when Plaintiff alleges that he had numerous medical conditions that apparently required treatment.  (Dkt. 1 at ¶¶ 19, 22, 89.)  Moreover, Plaintiff's allegations that "Defendants failed to properly investigate Perpetrator's conduct" and "[m]anaging agents and supervisors of Defendants hid Perpetrator's abuse" are unsupported and improper conclusions, particularly because there are *no* allegations demonstrating that Defendants were aware of NP Castillo's conduct or that Plaintiff or any other person reported or complained of this conduct to prompt an investigation. (*Id.* at ¶ 89.)  Nor are there

allegations demonstrating that Defendants' "managing agents and supervisors" were aware of any alleged sexual abuse, much less that they actively hid this abuse.  (*Id.*)  Indeed, there are no allegations identifying these "managing agents and supervisors" at all.

Further, even if Plaintiff had alleged factual allegations sufficient to demonstrate Defendants' awareness of the alleged sexual abuse, Plaintiff has failed to specifically allege that Defendants failed to investigate the alleged abuse or otherwise failed to discharge or punish NP Castillo for his alleged conduct to establish ratification.  *See Andrade,* 225 F. Supp. 3d at 1130.

Thus, Plaintiff has failed to sufficiently allege that Defendants ratified NP Castillo's intentional infliction of emotional distress against Plaintiff.

### C. Plaintiff's Sexual Harassment Claim Pursuant to Cal. Civ. Code § 51.9 Should be Dismissed.

To establish a sexual harassment claim pursuant to California Civil Code § 51.9, Plaintiff must prove there is a business, service, or professional relationship between Plaintiff and Defendants or that Defendants held themselves out as being able to help Plaintiff establish a business, service, or professional relationship with Defendants or a third party.  Cal. Civ. Code § 51.9(a)(1).  Such a relationship may exist between a plaintiff and a person, including, but not limited to, any of the following persons:

> (A) Physician, psychotherapist, or dentist. . . . (B) Attorney, holder of a master's degree in social work, real estate agent, real estate appraiser, investor, accountant, banker, trust officer, financial planner loan officer, collection service, building contractor, or escrow loan officer. (C) Executor, trustee, or administrator. (D) Landlord or property manager. (E) Teacher. (F) Elected official. (G) Lobbyist. (H) Director or producer.   (I) A relationship that is substantially similar to any of the above.

Cal. Civ. Code § 51.9(a)(1).

Furthermore, Plaintiff must show that Defendants made "sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or

engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe" *and* that Plaintiff suffered or will suffer economic loss or disadvantage or personal injury, including, but not limited to, emotional distress or the violation of statutory or constitutional right, as a result of the conduct detailed in paragraph (2). *See* Cal. Civ. Code § 51.9(a)(2)–(3).

Here, Plaintiff alleges that a "professional relationship" existed between NP Castillo and Plaintiff for the provision of medical care under the supervision of Defendants. (Dkt. 1 at ¶¶ 93–94.) Aside from conclusory assertions, the Complaint is devoid of allegations establishing that Plaintiff had a business, service, or professional relationship with *Defendants* as defined in Cal Civ Code § 51.9(a)(1). Even if it had, Plaintiff, an immigration detainee, did not have a business, service, or professional relationship with Defendants by virtue of their alleged operation of OMDC. Indeed, courts have held that OMDC/CoreCivic is not a "business establishment" for purposes of the Unruh Act under Cal. Civ. Code § 51. *See, e.g., Estate of Mejia v. Archambeault*, 2021 WL 4428990, at *8 (S.D. Cal. Sept. 27, 2021). The same should be found with respect to Plaintiff' sexual harassment claim.

Nor has Plaintiff alleged that *Defendants* made "sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe" in satisfaction of the second element. Cal. Civ. Code § 51.9(a)(2). Because Plaintiff has failed to allege that Defendants engaged in any of this conduct, he cannot establish that Defendants suffered personal injury and/or emotional distress *as a result of* this conduct to satisfy the third element. Cal. Civ. Code § 51.9(a)(3). Plaintiff's allegations are insufficient to assert a direct claim for sexual harassment against Defendants.

Plaintiff alleges that Defendants ratified NP Castillo's alleged sexual abuse of

Plaintiff. (Dkt. 1 at ¶¶ 96-97.)  But Plaintiff's conclusory allegations regarding ratification (which are identical to those asserted in his IIED claim) are insufficient to establish that Defendants authorized and/or adopted NP Castillo's alleged conduct to sufficiently state a claim for ratification here.  (*Id.*)  Therefore, Plaintiff's sexual harassment claim under Cal. Civ. Code § 51.9 should be dismissed with prejudice.

**D.    Plaintiff's Sexual Battery Claim Pursuant to Cal. Civ. Code § 1708.5 Should be Dismissed.**

Under Cal. Civ. Code § 1708.5(a), person commits a sexual battery who does any of the following:

> (1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results.

> (2) Acts with intent to cause a harmful or offensive contact with another by use of the person's intimate part, and a sexually offensive contact with that person directly or indirectly results.

> (3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

> (4) Causes contact between a sexual organ, from which a condom has been removed, and the intimate part of another who did not verbally consent to the condom being removed.

> (5) Causes contact between an intimate part of the person and a sexual organ of another from which the person removed a condom without verbal consent.

Cal. Civ. Code § 1708.5.

Plaintiff's sexual battery claim against Defendants is based solely on vicarious liability and ratification theories.  (*See* Dkt. 1 at ¶¶ 108.)  As stated at length above, committing sexual battery is not within the course and scope of employment and Plaintiff's Complaint is devoid of allegations demonstrating that Defendants ratified the alleged conduct of NP Castillo. There are no allegations sufficient to establish that Defendants or any of Defendants' employees were aware of, or should have been aware of, the alleged abuse.  Indeed, Plaintiff admittedly had multiple medical issues

for which he sought and/or was summoned for treatment.  This alone is not sufficient to put Defendants on notice that sexual abuse was occurring, particularly because there are *no* allegations that any of Defendants' other employees witnessed the alleged sexual abuse, or that Plaintiff otherwise reported the alleged sexual abuse.  A single allegation that NP Castillo allegedly sexually abused other detainees is simply not enough to establish knowledge or foreseeability.   And Plaintiff's conclusory allegations that Defendants ratified and/or failed to act "because for-profit prison companies generate billions of dollars in profit by cutting costs wherever possible and forcing the people in their care to suffer" is speculative and inflammatory.  (Dkt. 1 at ¶ 108.)  Likewise, Plaintiff's bald allegation that Defendants failed to properly investigate NP Castillo's conduct and that Defendants' "[m]anaging agents and supervisors" hid the alleged abuse is unsupported, when there is not a single allegation that Defendants were aware of any alleged assault in order to prompt an investigation, let alone that any of Defendants' "managing agents and supervisors" were aware of any of the events giving rise to Plaintiff's Complaint.  (*Id.*)  Plaintiff provides no facts to establish the identities of the managing agents or supervisors that allegedly hid the alleged abuse, nor does the Complaint describe when or how they did so.  Moreover, like his IIED claim, Defendants cannot be "strictly liable" for a sexual battery claim against a non-party employee pursuant to Cal. Civ. Code § 1708.5. [6]  *Farmers Ins. Group*, 47 Cal. Rptr. 2d at 487.

Plaintiff's Complaint allegations are not sufficient to establish a claim for sexual battery against Defendants based on theories of vicarious liability and/or ratification, and Plaintiff's sexual battery claim pursuant to Cal. Civ. Code § 1708.5

---

[6] Plaintiff claims that Defendants are strictly liable for "Perpetrator's intentional infliction of emotional distress of Plaintiff."  (Dkt. 1 at ¶ 108.)  Defendants assume this is a typographical error, and that Plaintiff intended to allege that Defendants are strictly liable for sexual battery.  To the extent Plaintiff intended to incorporate his IIED claim into his claim for sexual battery, because IIED is a distinctly separate cause of action for sexual battery pursuant to Cal. Civ. Code § 1708.5, any attempt to combine the two causes of action is improper.

should be dismissed with prejudice.

### E. Plaintiff's Punitive Damages Claims Under Cal. Civ. Code § 3294 Should be Dismissed.

Plaintiff claims that he is entitled to punitive damages under Cal. Civ. Code § 3294 in Counts Three, Four, and Five. (Dkt. 1 at ¶¶ 90, 99, 110.) Cal. Civ. Code § 3294(a) provides that a plaintiff may recover punitive damages "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(b) specifically provides that an employer shall *not* be liable for damages pursuant to subsection (a) based upon acts of an employee, "unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression fraud, or malice." In the context of a corporate employer like Defendants, "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Cal. Civ. Code § 3294(b).

Defendants, as corporate employers, cannot be liable for punitive or exemplary damages under § 3294(a), where there are *no* allegations that Defendants' officers, directors, or managing agents knew, consciously disregarded, authorized, and/or ratified any conduct alleged on behalf of NP Castillo. Bald assertions that Defendants "knew or should have known" about NP Castillo's alleged sexual misconduct fall woefully short of establishing knowledge, authorization, and/or ratification, and are simply not enough. (*See* Dkt. 1 at ¶¶ 90, 99, 110) *see also White v. Ultramar, Inc.*, 21 Cal. 4th 563, 571 (1999) (in passing § 3294(b), "[t]he drafters' goals were to avoid imposing punitive damages on employers who were merely reckless and to distinguish ordinary respondeat superior from corporate liability for punitive

damages."). Plaintiff's claims for punitive damages pursuant to Cal. Civ. Code § 3294 asserted in Counts Three, Four, and Five should be dismissed.

### F.      Does 1–50 Should be Dismissed.

While Plaintiff sues Does 1–50, "Does" are mentioned in only two paragraphs in Plaintiff's 120-paragraph Complaint.  (Dkt. 1 at ¶¶ 9–10.)  First, Plaintiff alleges that Does 1-50 were "negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to Plaintiff."  (Dkt. 1 at ¶ 9).  Next, Plaintiff alleges that DOES 1-10[7] "were agents, servants, employees, successors in interest, partners, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment and/or venture, and that each and every defendant, as aforesaid, when acting as principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer. (Dkt. 1 at ¶ 10).

While concrete allegations against a doe defendant are permissible where the identity of the alleged defendant is not known prior to filing the complaint, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), Plaintiff cannot assert claims against fictitious Doe Defendants as mere placeholders for additional facts and parties, particularly where, as here, Plaintiff admits that "the full extent of the facts linking such fictitiously sued Defendants is unknown to Plaintiff." (Dkt. 1 at ¶ 9). Plaintiff's Complaint is devoid of factual allegations against any Doe Defendant. Accordingly, Plaintiff has failed to sufficiently state any claim against Doe Defendants 1-50, which warrants dismissal of all does.  *See Lamb v. Floor & Décor Outlets of Am., Inc.,* No. 13CV0390 JAH (BLM), 2014 WL 12570175, at *3 (S.D.

---

[7] Plaintiff's Complaint references "DOES 1-10" and "Does 1-50." (Dkt. 1 at ¶¶ 9-10).  For purposes of this Motion, Defendants' arguments pertain to all Doe Defendants irrespective of how they are referenced numerically.

Cal. Mar. 28, 2014) (dismissing doe defendants where complaint fails to sufficiently allege claim against them).

In the alternative, Defendants request that Doe Defendants 1–50 be stricken from the Complaint pursuant to Rule 12(f). *See Sabatini v. California Bd. of Registered Nursing,* No. 18-CV-2036-AJB-AGS, 2019 WL 6782946, at *7 (S.D. Cal. Dec. 12, 2019), *aff'd*, No. 20-55017, 2021 WL 840954 (9th Cir. Mar. 5, 2021) ("Because federal courts do not favor naming Doe Defendants in actions originating in federal court, the Court sua sponte STRIKES all Doe Defendants from this action."); *Woo v. Home Loan Grp., L.P.,* No. 07-CV-0202-H, 2007 WL 6624925, at *5 (S.D. Cal. July 27, 2007) (granting defendants' motion to strike plaintiff's allegations regarding doe defendants).

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court dismiss the following claims asserted in Plaintiff's Complaint: (1) direct negligence claims for negligent supervision and training in Count Two; (2) intentional infliction of emotional distress in Count Three; (3) sexual harassment pursuant to Cal. Civ. Code § 51.9 in Count Four; and (4) sexual battery pursuant to Cal. Civ. Code § 1708.5 in Count 5.  Defendants also move for the dismissal of Does 1–50, and Plaintiff's claims for punitive damages under Cal. Civ. Code § 3294.

Dated:  February 14, 2024

By s/ Dana M. Keene
Dana M. Keene
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dkeene@strucklove.com

Matt Mahoney, Esq.
WITHAM MAHONEY & ABBOTT, LLP
mahoney@wmalawfirm.com

Attorney for Defendants CoreCivic, Inc.
and Correctional Medicine Associates, P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 14, 2024 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

Dated:  February 14, 2024

By s/ Dana M. Keene