Raymond P. Boucher, State Bar No. 115364
  *ray@boucher.la*
Alexander Gamez, State Bar No. 309708
  *gamez@boucher.la*
Michael Gorelik, State Bar No. 337068
  *gorelik@boucher.la*
Seena Paul, State Bar No. 340184
  *paul@boucher.la*
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903
Tel:   (818) 340-5400
Fax:   (818) 340-5401

*Attorneys for Plaintiff*
*Alexis Zelaya Gonzalez*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS ZELAYA GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC, INC.; and CORRECTIONAL MEDICINE ASSOCIATES, P.C.<br><br>Defendants. | Case No. 3:24-cv-00087-JAH-BLM<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1) **Violation of Cal. Gov. Code Section 7320;**<br>2) **Intentional Infliction of Emotional Distress; and**<br>3) **Sexual Battery**<br><br>**DEMAND FOR JURY TRIAL**<br><br>*Assigned to the Honorable John A. Houston* |

Plaintiff, Alexis Zelaya Gonzalez ("Plaintiff"), an individual, hereby alleges the following facts and claims against Defendants CoreCivic, Inc. and Correctional Medicine Associates, Inc. (collectively, "Defendants"), and respectfully requests a trial by jury of all issues and causes of action so triable:

**INTRODUCTION**

1. Plaintiff came to the United States through San Ysidro, California wherein he sought Asylum and was subsequently detained at the Otay Mesa Detention Center ("Otay") in San Diego, California in or around 2020.

2. Defendant CoreCivic, Inc. ("CoreCivic") is a private corporation at owns and manages private prisons and detention centers for profit. Pursuant to a contract with U.S. Immigration & Customs Enforcement ("ICE"), it operates Otay where Plaintiff was held.

3. While detained at Otay, Plaintiff was subjected to multiple sexual assaults per week for approximately one (1) year at the hands of a nurse practitioner employed by CoreCivic and Correctional Medicine Associates, P.C. ("CMA"). This employee presented himself to Plaintiff as a doctor with significant authority and framed his sexual assaults of Plaintiff to Plaintiff as medical treatment for Plaintiff's penile implants or, in the alternative, as a condition for providing Plaintiff with medical care for ongoing and severe back pain.

4. For-profit prison companies such as Defendants purposefully under-resource detention facilities, creating cesspools of suffering that generate millions of dollars in profits with little accountability or oversight. To combat this and hold private prison corporations responsible for the health and safety of those in their custody, in 2020, the California Legislature enacted A.B. 2338, the Accountability in Detention Act, now codified at California Government Code section 7320. Among other things, this law provides that if a private prison violates the terms of its contacts with the government, the victim may bring a civil action against the private prison for damages.

FIRST AMENDED COMPLAINT

5.      Plaintiff brings this action pursuant to Government Code section 7320 to hold Defendants accountable for failing to provide training to their staff pertaining to sexual abuse and assault awareness, prevention, intervention, and reporting, and their employees' failure to recognize and/or be alert to the risks and signs of the staff-on-detainee sexual assaults in violation of their contract with ICE, and to compensate Plaintiff for the lasting harm that Defendants' tortious conduct inflicted upon him.

## PARTIES

6.      From approximately 2020 to 2022, Plaintiff was detained at Otay in San Diego, California.

7.      Defendant CoreCivic is a for-profit corporation  conducts business in California. CoreCivic is the largest owner and operator of partnership correctional, detention, and residential reentry facilities in the nation with 111 facilities throughout the United States. CoreCivic has an annual revenue of $1.85 billion. All CoreCivic employees were acting within the scope of their employment at all times relevant to this Complaint.

8.      Defendant CMA employs physicians, nurse practitioners, physician assistants, and psychiatrists to work at Defendant CoreCivic's facilities including Otay. Upon information and belief, Defendant CMA is a subsidiary of and/or otherwise affiliated with Defendant CoreCivic. Indeed, CMA and CoreCivic share the same Tennessee address as their principal place of business. Healthcare professionals employed by CMA provide services exclusively for CoreCivic, and are, upon information and belief, also CoreCivic employees. All CMA employees were acting within the scope of their employment at all times relevant to this Complaint.

9.      Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants CoreCivic, and CMA, were agents, servants, employees, successors in interest, partners, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that each and every defendant, as aforesaid,

3

when acting as principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer.

## VENUE AND JURISDICTION

10. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.

11. Plaintiff is a citizen of El Salvador and currently resides at the El Centro Detention Facility in El Centro, California.

12. Defendant CoreCivic is incorporated in Maryland and headquartered in Tennessee.

13. Defendant CMA is incorporated in Tennessee and headquartered in Tennessee.

14. Venue is proper in this District under 28 U.S.C. § 1391 and 15 U.S.C. § 22, because a "substantial part of the events or omissions" on which the claim is based occurred in this District.

## FACTS

**I.     DEFENDANT'S EMPLOYEE SEXUALLY ASSAULTED PLAINTIFF**

15. Plaintiff is a native of El Salvador. In or around 2020, Plaintiff presented himself at San Ysidro wherein he sought Asylum.

16. Plaintiff was detained at Otay located in San Diego, California.

17. Defendant CoreCivic operates Otay.

18. Plaintiff suffers from back pain from an accident that occurred in 2015.

19. While detained at Otay, Plaintiff asked staff for health services related to his back pain, and specifically asked for an MRI, but staff only gave him an X-Ray.

20. During Plaintiff's detainment at Otay, he received penile implants.[1]

---

[1] *See* Marina Kamenev, *The Problem With DIY Penis Implants*, THE ATLANTIC (Feb. 1, 2013),

21. After receiving penile implants, Plaintiff's penis became infected.

22. Plaintiff met with a doctor who prescribed antibiotics to treat Plaintiff's penile infection.

23. Oscar Castillo, "Perpetrator," was employed by Defendants and worked as a Nurse Practitioner at Otay from September 2020 to August 2022.[2]

24. Upon information and belief, CoreCivic is the parent company of CMA. CoreCivic's Chief Medical Officer is the President of CMA. CoreCivic directly hires all non-provider positions for its facilities while its subsidiary, CMA, employs CoreCivic's physicians, nurse practitioners, physician assistants, and psychiatrists. Health care professionals employed by CMA, such as Perpetrator, provide services exclusively for CoreCivic and are CMA and CoreCivic employees.

25. Perpetrator initiated contact with Plaintiff after Plaintiff received medical treatment for his penile infection. Perpetrator asked Plaintiff what was wrong, and Plaintiff disclosed his back pain to Perpetrator.

26. Perpetrator presented himself to Plaintiff as a doctor with significant authority and ability to address and treat Plaintiff's back pain. Plaintiff believed Perpetrator was a doctor with significant authority.

27. Thus began an approximate year-long string of Perpetrator's sexual assaults of Plaintiff.

28. Perpetrator presented his sexual assaults to Plaintiff as medical treatment for his penile implants or, in the alternative, as a condition for providing further medical care for Plaintiff's back injury.

29. Framed as a condition for providing medical care for Plaintiff's back injury, Perpetrator sexually assaulted Plaintiff in exchange for, for example, setting

---

https://www.theatlantic.com/health/archive/2013/02/the-problem-with-diy-penis-implants/272766/ (discussing the widespread practice of male prisoners performing penile implants by inserting foreign bodies under the skin of the penis on themselves and each other).

[2] *See Oscar Castillo*, LINKEDIN (last accessed Nov. 13, 2023), https://www.linkedin.com/in/oscar-castillo-8471a417b.

up Plaintiff with physical therapy for several months.

30. Perpetrator took a special interest in Plaintiff's penile implants and touched and examined them. Typically, Perpetrator would force Plaintiff's back to the door, have Plaintiff pull down his pants, and proceed to masturbate Plaintiff and rub Plaintiff's penile implants. During these assaults, Perpetrator would also ask Plaintiff about his sex life.

31. Framed as medical treatment for Plaintiff's penile implants, Perpetrator would insert needles into Plaintiff's penis to draw out fluid.

32. There were times when Perpetrator summoned Plaintiff, Plaintiff did not comply, and refused to submit himself to Perpetrator. Perpetrator would get upset when this happened.

33. Upon information and belief, every medical examination of a detainee involved summoning the detainee, chaperoning the detainee, and/or constantly tracking the detainee's whereabouts.

34. The sexual assaults occurred multiple times per week for one (1) year. The last sexual assault occurred on or around August 12, 2022.

35. Upon information and belief, Perpetrator sexually assaulted other detainees who were interviewed by local law enforcement about perpetrator's alleged inappropriate behavior with detainees at the facilities.

36. As a result of the repeated sexual assaults, Plaintiff has suffered and continues to suffer physical pain, emotional distress, psychological trauma, and mental deterioration.

**II. CALIFORNIA ENACTED GOVERNMENT CODE SECTION 7320 TO PROTECT PEOPLE WITHIN ITS BORDERS FROM ABUSE BY PRIVATE PRISONS**

**A. For-Profit Prison Companies Harm People to Maximize Profits**

37. Defendants and their employees' actions, and lack thereof, are consistent with its business model. For-profit prison companies are some of the most harmful, exploitative institutions in our society. These companies generate billions of dollars

in profit by keeping human beings in cages, cutting costs wherever possible, and forcing the people in their care to suffer.

38.    In 2016, the U.S. Department of Justice's Office of Inspector General published a review of for-profit prison companies with which the Federal Bureau of Prisons contracted, including CoreCivic (formerly Corrections Corporation of America and referred to within the review as "CCA"), finding that facilities run by for-profit companies had worse safety and security outcomes than government-run facilities in almost every aspect.[3] That year, Deputy Attorney General Sally Q. Yates issued a letter ordering the Bureau of Prisons to begin the process of reducing, and ultimately ending, its use of for-profit private prisons, including facilities run by Defendants.[4] She stated, "[for-profit prisons] simply do not provide the same level of correctional services, programs, or resources" as government-run facilities and "do not maintain the same level of safety and security."[5]

**B.    California Enacted Government Code Section 7320 to Protect People in California from Harm While Housed in For-Profit Detention Facilities**

39.    California enacted Government Code section 7320 to protect people in the state from being abused, exploited, and harmed by for-profit prison companies.[6] The legislation is an important exercise of police power to promote the health, safety, and welfare of California residents detained in for-profit facilities.[7]

40.    Government Code section 7320 requires "[a]ny private detention facility operator [to] comply with, and adhere to, the detention standards of care and

---

[3] Dep't of Just., Off. of Inspector Gen., *Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons* (Aug. 2016), at p. i-ii, https://oig.justice.gov/reports/2016/e1606.pdf.

[4] Sally Q. Yates, *Reducing our Use of Private Prisons*, DEP'T OF JUST. OFF. OF THE DEPUTY ATT'Y GEN. (Aug. 18, 2016), https://www.justice.gov/archives/opa/file/886311/download.

[5] *Id.*, at 1.

[6] Staff of Cal. S. Jud. Comm., Bill Analysis of A.B. 3228 (Bonata), 2019-2020 Reg. Sess., at 1-2 (Aug. 10, 2020), https://sjud.senate.ca.gov/sites/sjud.senate.ca.gov/files/ab_3228_bonta_senate_judiciary_committee_analysis.pdf.

[7] *Id.*, at 9-10.

confinement agreed upon in the facility's contract for operations."[8]

41.    The statute allows detainees to bring a civil suit for relief if they have been injured by a for-profit facility's, or persons acting on behalf of a for-profit facility's, tortious action in violation of the detention standards.[9]

42.    The relevant standards of care for Defendants and other for-profit detention facilities that contract with ICE are ICE's Performance-Based National Detention Standards ("PBNDS"). The standards were revised substantially in 2011, and again in 2016, to improve medical and mental health services, increase access to recreation, programs, and services, and improve the process for reporting and responding to complaints.[10]

## III. DEFENDANTS VIOLATED MULTIPLE TERMS OF THEIR CONTRACT WITH ICE

43.    As part of Defendants' contract with ICE, they are required to comply with ICE's PBNDS.[11] The PBNDS establish the minimum requirements for treatment of people in ICE custody.

44.    Among the standards required by the PBNDS are minimum policies, procedures, and expected outcomes for a Sexual Abuse or Assault Prevention and Intervention Program[12] and staff training.[13]

45.    PBDNS section 2.11(V) delineates expected practices pertaining to sexual abuse and assault prevention and intervention. PBDNS section 2.11(V), subdivision (E) regards staff training, and mandates that employee training shall include: "definitions and examples of prohibited and illegal sexual behavior"; "recognition of situations where sexual abuse and/or assault may occur"; and

---

[8] Cal. Gov. Code § 7320(a).
[9] *Id.* § 7320(c).
[10] U.S. Imm. and Customs Enf't, *Performance-Based National Detention Standards 2011* (Revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf.
[11] *Id.*
[12] *See* PBDNS, section 2.11.
[13] *See* PBDNS, section 7.3.

"recognition of the physical, behavioral and emotional signs of sexual abuse and/or assault and ways to prevent and respond to such occurrences[.]"

46.    On information and belief, Defendants failed to abide by PBNDS section 2.11(V)(E) by failing to provide, pursuant to Section 2.11(V)(E), training to their staff pertaining to sexual abuse and assault prevention and intervention. Because of these failures, Defendants' employees did not recognize or were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go, and did not protect Plaintiff, thereby enabling Perpetrator's sexual assaults of Plaintiff. Had Defendants' employees received training pursuant to Section 2.11(V), Defendants' employees would have recognized, been alert to, and intervened in Perpetrator's sexual assaults of Plaintiff. Defendants' employees who failed to recognize, be alert to, and intervene in Perpetrator's sexual assaults of Plaintiff were operating within the scope of their employment with Defendants.

47.    PBNDS section 7.3(V) provides that "[t]he facility administrator shall ensure that the facility conducts appropriate orientation, initial training and annual training for all staff, contractors and volunteers, consistent with this standard and with appropriate assessment measures." Under PBNDS section 7.3(V), subdivision (B) provides that "[e]ach new employee, contractor, and volunteer shall be provided training prior to assuming duties" including, but not limited to "code of ethics[,]" "staff rules and regulations[,]" and "sexual abuse/sexual misconduct awareness and reporting." Under PBNDS section 7.3(V), subdivision (C) provides that "[e]ach new employee, contractor, and volunteer shall be provided initial and annual training appropriate to their assignments" and specifically, the training program for "[p]rofessional and support employees […] who have regular or daily detainee contact" shall include "sexual harassment and sexual misconduct awareness (including the contents of standard '2.11 Sexual Abuse and Assault Prevention and Intervention')[,]" "appropriate conduct with detainees[,]" and "code of ethics[.]"

48. On information and belief, Defendants failed to abide by PBNDS section 7.3(V) by failing to provide, pursuant to Section 7.3(V), initial training to their staff regarding sexual abuse and sexual misconduct awareness and reporting and/or failing to provide, pursuant to Section 7.3(V), annual training to its staff regarding the same under the standards articulated by PBNDS section 2.11 Sexual Abuse and Assault Prevention and Intervention. Because of these failures, Defendants' employees were not trained, or not adequately trained on sexual abuse and sexual misconduct awareness and reporting, failed to abide by the standards in PBNDS section 2.11, and thereby enabled Perpetrator's sexual assaults of Plaintiff. Defendants' employees who failed to provide initial training and annual training to their staff regarding sexual abuse and sexual misconduct awareness and reporting were operating within the scope of their employment with Defendants.

49. PBNDS section 2.11(II) delineates expected outcomes of PBNDS section 2.11(V) expected practices. PBDNS section 2.11(II) provides the expected outcome that "[s]taff shall be alert to potential risks or signs of sexual abuse or assault, and take appropriate action to mitigate any identified risks or protect a detainee as necessary[.]"

50. Defendants and their employees failed to abide by PBNDS section 2.11(II) when they failed to be alert to potential risks and signs of Perpetrator's sexual assaults of Plaintiff, take appropriate action to mitigate the clear identifiable risks, and protect Plaintiff. Because of these failures, Defendants' employees did not recognize or were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go, and did not protect Plaintiff. Defendants' employees thereby enabled Perpetrator's sexual assaults of Plaintiff. Defendants' employees who failed to recognize, be alert to, and intervene in Perpetrator's sexual assaults of Plaintiff were operating within the scope of their employment with Defendants.

51. PBNDS section 2.11(V)(I) regards prevention and states, "[a]ll staff and

10
FIRST AMENDED COMPLAINT

detainees are responsible for being alert to signs of potential situations in which sexual assaults might occur, and for making reports and intervention referrals as appropriate."

52. Defendants and their employees failed to abide by PBNDS section 2.11(V)(I) by failing to be alert to the obvious signs of situations concerning Perpetrator and Plaintiff in which sexual assaults occurred. Defendants' employees were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go. Defendants' employees thereby enabled Perpetrator's sexual assaults of Plaintiff. Defendants' employees who failed to be alert to and report Perpetrator's sexual assaults of Plaintiff were operating within the scope of their employment with Defendants.

53. Defendants' employees' actions, and failures to act, all occurred while they were at Otay and during their working hours, the employees acted in service to Defendants, and their operation of Otay, rather than in their own interests, and these actions were the kind that Defendants hired employees to perform on their behalf.

## FIRST CAUSE OF ACTION

### Violation of Cal. Gov. Code § 7320

### [Cal. Gov. Code § 7320]

### [Against All Defendants]

54. Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

55. At all times relevant, Defendants are private detention facility owners and operators.

56. At all times relevant, Defendants employed Perpetrator as a nurse practitioner at Otay.

57. Defendants are legally required to exercise a duty of ordinary care and

skill in compliance with and adherence to the detention standards of care and confinement agreed upon in the Facility's contract for operations.

58. ICE's PNBDS are the applicable detention standards for care and confinement that Defendants agreed to abide by in their contract to operate Otay.

59. Defendants are legally required to exercise a duty of ordinary care and skill in their compliance with and adherence to ICE's PBNDS.

60. Upon information and belief, Defendants violated ICE's PBNDS section 2.11 when they failed to provide training to their staff pertaining to sexual abuse and assault prevention and intervention.

61. As a result of this violation of the PBNDS, Defendants' employees did not recognize or were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go, and did not protect Plaintiff, thereby enabling Perpetrator's sexual assaults of Plaintiff.

62. Upon information and belief, Defendants violated ICE's PBNDS section 7.3 when they failed to provide, pursuant to Section 7.3(V), initial training and/or annual training to its staff regarding sexual abuse and sexual misconduct awareness and reporting.

63. As a result of this violation of the PBNDS, Defendants' employees were not trained, or not adequately trained, failed to abide by the standards in PBNDS section 2.11, thereby enabling Perpetrator's sexual assaults of Plaintiff.

64. Defendants violated ICE's PBNDS section 2.11 when they failed to provide instruction to Plaintiff regarding staff-on-detainee sexual abuse and coercive sexual activity and information about self-protection and indicators of sexual abuse.

65. As a result of this violation of the PBNDS, Plaintiff was not able to protect himself and/or recognize as sexual abuse Perpetrator's acts framed as medical treatment or, in the alternative, as a condition for providing further medical care for Plaintiff's back injury.

66.    CoreCivic and their employees violated ICE's PBNDS section 2.11 when their employees failed to be alert to potential risks and signs of Perpetrator's sexual assaults of Plaintiff, take appropriate action to mitigate the clear identifiable risks, and protect Plaintiff.

67.    As a result of this violation of the PBNDS, Defendants' employees did not recognize or were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go, did not protect Plaintiff, and thereby enabled Perpetrator's sexual assaults of Plaintiff.

68.    Defendants and their employees violated ICE's PBNDS section 2.11 when their employees failed to be alert to the signs of situations concerning Perpetrator and Plaintiff in which sexual assaults occurred.

69.    As a result of this violation of the PBNDS, Defendants' employees were not alert to the signs of sexual abuse, such as Perpetrator summoning Plaintiff to the medical area multiple times a week for one (1) year and Plaintiff's hesitation or refusal to go, and thereby enabled Perpetrator's sexual assaults of Plaintiff.

70.    Defendants' violations of the PBNDS caused Plaintiff's injuries, including physical pain, emotional distress, psychological trauma, and mental deterioration.

71.    Defendants did not exercise ordinary care, as they failed to comply or substantially comply with the PBNDS.

## SECOND CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### [Against All Defendants]

72.    Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

73.    Defendants' subjection of Plaintiff to and failure to protect him from

13

repeated sexual assaults by their employee over the course of one (1) year was so extreme or outrageous as to exceed all bounds of that usually tolerated in a civilized community. Defendants' outrageous conduct toward Plaintiff was not routine, nor behavior that an individual in their care should be expected to endure and/or tolerate.

74.    At all relevant times, Defendants intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, by their conduct, as described herein.

75.    Perpetrator intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, by his repeated sexual assaults of Plaintiff over the course of one (1) year.

76.    Perpetrator's conduct was so extreme or outrageous as to exceed all bounds of that usually tolerated in a civilized community, and was not routine, nor behavior that an individual in his care should be expected to endure and/or tolerate, particularly, as part of a trusted nurse-patient relationship.

77.    As a result of Perpetrator's conduct, Plaintiff suffered severe emotional distress including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame so substantial or long lasting that no reasonable person in a civilized society should be expected to bear it, all to his damage in an amount to be established according to proof at trial. Perpetrator's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

Defendants are liable for Perpetrator's intentional infliction of emotional distress of Plaintiff under the principles of *respondeat superior* and/or other principles of vicarious liability. At all times, Perpetrator acted in the course and scope of his apparent and/or actual agency and servitude with Defendants, and his actions toward Plaintiff were foreseeable.

/ / /

/ / /

/ / /

14

FIRST AMENDED COMPLAINT

## THIRD CAUSE OF ACTION

### Sexual Battery

### [Cal. Civ. Code. § 1708.5]

### [Against all Defendants]

78.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

79.   Every person is bound, without contract, to abstain from injuring the person […] of another, or infringing upon any of his […] rights." (Cal. Civ. Code § 1708.)

80.   "A person commits a sexual battery who […]: (1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results. [and] (3) Acts to cause an imminent apprehension [of a harmful or offensive contact] and a sexually offensive contact with that person directly or indirectly results." (Cal. Civ. Code § 1708.5(a)(1) and (3).)

81.   "Intimate part" includes the "sexual organ […] of any person[.]" (Cal. Civ. Code § 1708.5(d).) "Offensive contact" is "contact that offends a reasonable sense of personal dignity." (Cal. Civ. Code § 1708.5(f).)

82.   At all relevant times, Perpetrator intended and acted with the intent to cause a harmful and/or offensive contact with Plaintiff's most intimate parts, including but not limited to Plaintiff's penis, which would offend a reasonable sense of personal dignity.

83.   Multiple times per week for approximately one (1) year, Perpetrator touched Plaintiff or caused Plaintiff to be touched on his penis under the guise of performing a medically necessary procedure, with the intent to harm or offend his personal dignity, and violated his right to freedom from intentional, harmful, unconsented contact with his body. A sexually offensive contact resulted. A

FIRST AMENDED COMPLAINT

reasonable person in Plaintiff's situation, with knowledge of Perpetrator's inappropriate intent, would have been offended by the touching.

84. At no time during these incidents did Plaintiff consent to Perpetrator's touching by words, acts, silence, or inaction.

85. Defendants are liable for Perpetrator's intentional infliction of emotional distress of Plaintiff under the principles of *respondeat superior* and/or other principles of vicarious liability. At all times, Perpetrator acted in the course and scope of his apparent and/or actual agency and servitude with Defendants, and his actions toward Plaintiff were foreseeable.

86. As a direct result of Perpetrator's conduct, Plaintiff suffered injuries including but not limited to, physical and mental pain and suffering, emotional distress, physical injuries, past and future costs of medical care and treatment, and other damages, in amounts not yet ascertained but which exceed the minimum jurisdictional limits of this Court.

87. Plaintiff has incurred and will continue to incur attorney's fees and costs in the prosecution of this action. Plaintiff will seek recovery of all such fees and costs to the fullest extent allowable under the law in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court enter judgement in his favor and against Defendant as follows:

1. Compensatory damages;

2. Attorneys' fees and costs; and

3. All such other and further relief as the Court may deem just, proper, and equitable.

FIRST AMENDED COMPLAINT

DATED:  October 24, 2024          BOUCHER LLP


By: _____
          RAYMOND P. BOUCHER
          ALEXANDER GAMEZ
          MICHAEL GORELIK
          SEENA PAUL

          *Attorneys for Alexis Zelaya Gonzalez*

FIRST AMENDED COMPLAINT

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all claims in this litigation.

DATED: October 24, 2024          BOUCHER LLP


By: _____

RAYMOND P. BOUCHER
ALEXANDER GAMEZ
MICHAEL GORELIK
SEENA PAUL

*Attorneys for Alexis Zelaya Gonzalez*

FIRST AMENDED COMPLAINT